**Glen YOUNG, Appellant,**

v.

**KILROY OIL COMPANY OF TEXAS, INC., et al., Appellees.**

No. 01–82–0592–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 12, 1984.

Rehearing Denied May 17, 1984.

238

Charles M. Haden, Brown & Haden, J.L. Hinojosa, Houston, for appellant.

J. Douglas Sutter, Terry P. Ayre, Houston, for appellees.

Before EVANS, C.J., and BASS and DUGGAN, JJ.

## OPINION

DUGGAN, Justice.

In this personal injury suit involving federal maritime law, Plaintiff Glen Young appeals a take-nothing judgment rendered in favor of defendant Cities Service Company following a jury verdict awarding plaintiff $505,000 in damages. Kilroy Oil Company of Texas, Inc., was originally a defendant but was dismissed prior to trial.

The plaintiff's claim arose from an injury which occurred on an offshore oil drilling platform approximately forty miles off the coast of Texas in the Matagorda Bay area. Defendant Cities Service Company (hereafter "Cities"), as leaseholder of the drilling site, was in the process of developing oil and gas production at this location. Cities had entered into a Master Service Agreement with defendant Frank's Casing Crew and Rental Tools, Inc. (hereafter "Frank's"), whereby Frank's was to furnish a casing crew to run casing into the well.

"Running casing" is the process of inserting joints of casing into a well and coupling them with joints previously run. Plaintiff, an employee of Frank's, was a "pipe stabber," who worked above the rig floor from a "stabbing board." Other members of the crew would raise a joint of casing to him. He would then grasp the pipe with his arms and line it up with the pipe already in the well so that the workers below could screw the two pieces together. These joints of pipe weigh from 1,500 to 3,800 pounds and must be perfectly round in order to "make up" properly. As a result of wrestling with "out-of-round" pipe for ten to twelve hours, the plaintiff suffered a severe back injury. He sued (1) his employer, Frank's; (2) the operator of the lease, Cities; and (3) the owners of the "jack-up" rig OCEAN KING, Ocean Drilling and Exploration Company and Odeco, Inc. (both hereafter "Odeco"). Cities' answer included a cross-claim against Frank's for contractual indemnity in the event that plaintiff recovered against Cities, "including, but not limited to attorney's fees, expenses, and court costs."

Immediately prior to trial, plaintiff entered into a Mary Carter Agreement with Frank's and Odeco, pursuant to which he accepted $100,000 from Frank's and $25,000 from Odeco in full settlement of his claims against these two defendants. He then proceeded to trial against Cities with Frank's and Odeco remaining as parties to the lawsuit. The jury found that Frank's failed to adequately supervise the plaintiff, that Cities negligently furnished bad or out-of-round pipe, and that the plaintiff failed to seek relief, all of which proximately caused his back injury. Odeco was not found negligent. In answer to the comparative negligence issue, the jury found that Frank's was 50% negligent, Cities was 40% negligent, and the plaintiff was 10% negligent. Damages were found to be $505,000.

In spite of such jury findings, the court entered a plaintiff take-nothing judgment based on the Master Service Agreement between Frank's and Cities. That Agreement contained an indemnity clause requiring Frank's to indemnify Cities for, among other things, any liability and related expenses for personal injuries resulting from the performance or nonperformance of the Master Service Agreement. The trial court found that Frank's was obligated to indemnify Cities in the amount of $202,000, or 40% of the damages awarded by the jury, and that, pursuant to the Mary Carter Agreement, the plaintiff had agreed to indemnify Frank's against any recovery growing out of this litigation against Frank's by Cities, exclusive of any attorney's fees. Judgment was rendered in favor of Cities against Frank's in the amount of $50,046.01 for attorney's fees, and the plaintiff was awarded nothing. Only the plaintiff perfected an appeal.

On January 21, 1983, some seven months after the judgment was entered, the district clerk of Harris County issued a writ of execution at Cities' behest against Frank's for the $50,046.01. However, before any of Frank's property was seized, Frank's posted with the district clerk a cash deposit of $59,054.30 in lieu of a supersedeas bond in an attempt to supersede the judgment entered against Frank's and in favor of Cities pending the outcome of this appeal.

On February 3, 1983, after reviewing motions filed by the parties and hearing argument of counsel, the trial court issued an order finding that Frank's filed the cash deposit in lieu of supersedeas bond, "purportedly in accordance with Rule 364 of the Texas Rules of Civil Procedure," intending to supersede the judgment entered June 23, 1982, against Frank's and in favor of Cities. The order further found that Frank's did not properly perfect an appeal by filing a bond or affidavit with the clerk within thirty days after the judgment was signed, as required by Rule 356(a). Consequently, the court vacated the writ of supersedeas issued by the district clerk, declared it to be null and void, and ordered the district clerk to pay Cities in full satisfaction and discharge of the judgment. Cities was paid, and the remaining cash was returned to Frank's.

Before considering the plaintiff-appellant's four points of error and Frank's two cross-points, we address two "points of argument" asserted by appellee, Cities.

First, as to the plaintiff-appellant, Cities contends that the issues presented by the plaintiff are moot and that this court must, accordingly, dismiss the appeal for lack of jurisdiction. Alternatively, Cities insists that the brief filed by Frank's must be quashed and its "appeal" dismissed. Both assertions were presented by Cities' pre-submission motion to this court. By our pre-submission order of April 8, 1983, we denied both motions to avoid piecemeal disposition of the appeal and to afford all parties full opportunity to be heard by supplemental briefs. Cities has reurged both arguments by its briefs, and all parties' briefs and oral arguments have been considered.

As to plaintiff-appellant, Cities argues that the only judgment rendered by the trial court has been satisfied in full and completely discharged by the district clerk's issuance of a check to Cities following the foreclosure upon the cash deposited by Frank's in lieu of a supersedeas bond. As authority, Cities cites cases holding that a satisfied judgment is legally defunct. Since no party has any further liability under the judgment, Cities reasons, this court can grant no effective relief and should dismiss the appeal. We disagree.

▮ Generally, questions involved in an appeal become moot when the judgment is voluntarily satisfied or complied with by the *complaining party*, and the appellate court will not thereafter retain jurisdiction to decide the case. *City of Mesquite v. Rawlins*, 399 S.W.2d 162, 169 (Tex.Civ.App. —Tyler 1966, writ ref'd n.r.e.) (where the judgment creditor, the city, was estopped to appeal after accepting payment of the judgment amount). Here, the complaining party, the plaintiff-appellant, was *ordered* to take nothing, notwithstanding a jury finding that $202,000 of his total damages was attributable to Cities' negligence. The action of third parties (here, the payment into the court's registry by Frank's) will

not be permitted to deny an appellant his opportunity for appellate review of a judgment injurious to him. Plaintiff's points of error are predicated upon the court finding Cities to be indemnified against liability for plaintiff's injuries. Since the plaintiff has properly perfected his appeal from that adverse judgment, the controversy between him and Cities has not terminated, and all issues which have been properly raised by his points of error, including the issues of indemnification between Cities and Frank's, on the one hand, and between Frank's and plaintiff, on the other, will be determined on this appeal as germane to the plaintiff's case. *Richards Mfg. Co. v. Aspromonte*, 557 S.W.2d 543, 546 (Tex.Civ. App.—Houston [1st Dist.] 1977, no writ). We reject appellee Cities' argument that the plaintiff-appellant's issues are moot.

As to appellee Frank's, Cities argues that Frank's did not perfect an appeal of the judgment against it and urges this court not to allow Frank's to "ride the coattails" of the plaintiff in the posture of an appellant.

Frank's is an appellee herein since it is a party against whom plaintiff-appellant's appeal is taken, *i.e.*, a party who has an interest adverse to the setting aside of the judgment. *Slayton & Co. v. Horsey*, 97 Tex. 341, 78 S.W. 919, 920 (1904); *Hall Music Co. v. Hall*, 120 S.W. 904, 905 (Tex. Civ.App.1909, no writ).

▮ An appellee may use cross-points to bring forward complaints of some ruling or action of the trial court that the appellee alleges constituted error as to it. However, this right of an appellee is subject to the limitation that such cross-points must affect the interest of the *appellant* or bear upon matters presented in the appeal. *Hernandez v. City of Fort Worth*, 617 S.W.2d 923, 924 (Tex.1981). *Scull v. Davis*, 434 S.W.2d 391, 394 (Tex.Civ.App.—El Paso 1968, writ ref'd n.r.e.).

Frank's first appellee's brief simply adopts *in toto* the brief filed by appellant, Glen Young. Frank's second appellee's brief contains two cross-points, the first of

which asserts that the court's judgment is in error in ordering Frank's to pay Cities' attorney's fees, in vacating Frank's supersedeas bond, and in foreclosing on Frank's cash deposit in lieu of bond. Frank's second point asserts error in the court's admission and interpretation of the Master Service Agreement between Frank's and Cities. Neither of Frank's cross-points are directed to the defense of the judgment against appellant. Both cross-points place Frank's in the role of an appellant and in fact urge that the court's judgment be set aside.

██ However, Frank's cannot be an appellant. An appellant must file a cost bond, cash, or affidavit in lieu thereof with the clerk within thirty days after the judgment is signed, or within ninety days after the judgment is signed if a timely motion for new trial has been filed by any party. Tex.R.Civ.Pro. Rule 356 is mandatory and jurisdictional, *Glidden Co. v. Aetna Casualty & Surety Co.*, 155 Tex. 591, 291 S.W.2d 315, 318 (Tex.1956), and the time limits prescribed for the filing of bonds for costs on appeal cannot be dispensed with or enlarged by the courts of appeals for any reason. *Killgore v. Guardianship of Killgore*, 569 S.W.2d 567, 568 (Tex.Civ.App.— San Antonio 1978, no writ).

██ Frank's cash deposit in lieu of a supersedeas bond was filed with the district clerk on January 31, 1983, more than seven months after the judgment it attempted to supersede was signed on June 23, 1982. A supersedeas bond, if timely filed, may serve as a cost bond. *Alejo v. Pellegrin*, 616 S.W.2d 331 (Tex.Civ.App.— San Antonio 1981, writ dism'd).

██ Frank's has cited no case authority, and we find none, holding that the filing of a supersedeas bond permits a non-appealing party to stay execution of a judgment by obtaining a writ of supersedeas. To the contrary, such an attempt to supersede a final judgment is void. *Kantor v. Herald Publishing Co., supra.* See *Renger v. Jeffrey*, 143 Tex. 73, 182 S.W.2d 701 (1944). The trial court correctly granted

Cities' motion to vacate Frank's cash deposit in lieu of supersedeas bond, since Frank's was not an appellant and the judgment was final as to it. Frank's briefs asserting its "cross-points" against appellee Cities are therefore ordered quashed and its attempted appeal is dismissed.

The plaintiff's first point of error asserts that the court erred in entering a judgment that he take nothing from Cities because the indemnity clause contained in the Master Service Agreement, on which the court based its judgment, was not in evidence.

The plaintiff contends that paragraphs 5 and 5(a) of the Agreement, containing the indemnity provisions in question, were deleted at the request of Cities before the instrument was offered and admitted into evidence as Defendant's Exhibit No. 36, and the court therefore could not consider these clauses as evidence in this case and could not base its judgment on them.

Cities has obtained and filed, pursuant to Tex.R.Civ.Pro. 428, an affidavit of the trial judge certifying to this court that the Master Service Agreement was admitted in its entirety; that, prior to the trial and during a hearing on the parties' motions in limine, he determined that provisions pertaining to indemnity and insurance matters (paragraphs 5 and 8 therein) were to be excised from the contract before it went to the jury; and that he reviewed and considered the entire Master Service Agreement in reaching his decision.

██ We reject the plaintiff's no evidence (of indemnity) contention for two reasons. First, the record does not indicate the trial court was ever apprised, by motion for instructed verdict, motion for judgment n.o.v., motion for new trial, or in any other manner, that the indemnity paragraphs were not properly before the court. Legal insufficiency points may only be raised when the proper predicate has been made in the trial court. Cornelius, *Appellate Review of Sufficiency of the Evidence Challenges In Civil and Criminal Cases*, 46 Tex.B.J. 439, 440 (1983); Calvert *"No Evidence" and "Insufficient Evidence"*

*Points of Error,* 38 Tex.L.Rev. 361, 362 (1960).

Second, the plaintiff in fact took the opposite position at trial. The statement of facts reveals the following exchange immediately preceding the charge to the jury:

[PLAINTIFF'S COUNSEL]: Your Honor, we object to the contract between Cities Service and Frank's going to the jury with Paragraph Five obliterated. It came into evidence and was admitted without qualifications, and the jury has not been allowed to see the whole contract, and it goes to the heart of the case. For that reason we make that objection.

THE COURT: Paragraph Five being the indemnity provision in sole negligence cause [sic]?

[PLAINTIFF'S COUNSEL]: Yes.

We consider this statement, which is inconsistent with plaintiff's present position, to be an admission that the entire contract was before the court. *See Texas General Indemnity Co. v. Scott,* 152 Tex. 1, 253 S.W.2d 651, 655 (1953). Plaintiff's first point of error is overruled.

By his second point of error, the plaintiff contends that the trial court erred in construing the indemnity provisions of the Master Service Agreement because, under applicable federal maritime law, the Agreement does not require Frank's to indemnify Cities for Cities' *concurrent* negligence.

■■■■ Cities insists that plaintiff has no standing to question the validity of the indemnity provisions of the Master Service Agreement between Cities and Frank's. In the alternative, Cities points out that the contract provision excuses Frank's only from liability resulting from the *sole* negligence of Cities.

We reject Cities' challenge to plaintiff's standing. Cities cites several cases for the proposition that one not a party privy to an agreement lacks standing to question whether its indemnity provisions are enforceable, and cites other cases supporting its assertion that plaintiff has not shown himself to be a third party beneficiary of the Master Service Agreement.

Cities argues that the trial court's incorporation of the indemnity agreement into the final judgment does not give appellant standing to question the agreement's validity on appeal since he lacked standing to make such assertions at trial.

Plaintiff's suit was not a contract action but a tort action, and the indemnity provisions of the Agreement between Frank's and Cities were, in part, the basis for the trial court's rendition of the final take-nothing judgment against him. Accordingly, he is an aggrieved party, and has standing to appeal that judgment and all of its parts.

While it is true that plaintiff was not a party to the Master Service Agreement nor a third party beneficiary, he was, in effect, an indirect indemnitor under that contract since Frank's liability was transferred to him by way of the Mary Carter Agreement, as is set out in the final judgment. Cities cites no authority holding that a party injured by a court's interpretation of a contract may not question that interpretation on appeal. The United States Supreme Court has said that "standing to sue" means that a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy. *Sierra Club v. Morton,* 405 U.S. 727, 731, 92 S.Ct. 1361, 1364, 31 L.Ed.2d 636 (1972). Plaintiff's "stake" in the instant controversy was his claim for personal injury damages; at issue on appeal is the question whether he is entitled to $202,000 from appellee Cities for those injuries. His standing to sue is obvious; his standing to appeal follows as a matter of course.

The indemnity clause at issue reads as follows:

5. CONTRACTOR shall defend, indemnify, protect and hold harmless CITIES SERVICE, its co-owners and joint venturers (if any) in the project covered hereby or in connection with which the work or operations covered or contemplated by this Agreement are to be performed, and its and their officers, directors, agents, employees and invitees, from and against injuries to or illnesses or death of any and all persons and loss-

es of or damages to property caused by, resulting from, occurring in connection with, or arising out of, the performance or non-performance of this Agreement or the prosecution of work or operations covered or contemplated hereby, *wheresoever or howsoever caused,* and from and against all liabilities, claims, actions and judgments therefor, together with costs and expenses (including attorney's fees) incurred in connection therewith except in the following instances:

(a) CITIES SERVICE agrees that the above provision shall not apply to injuries to or deaths of any and all persons and losses of or damages to property *which are caused by or result from the sole negligence of CITIES SERVICE* .... (Emphasis added).

 The parties agree that the interpretation of the indemnity clauses of the Master Service Agreement, a maritime contract, is governed by federal admiralty law. *Corbitt v. Diamond M. Drilling Co.,* 654 F.2d 329, 332 (5th Cir.1981). Where there is a judicially established federal admiralty rule on an issue, the court should look to that rule, to resolve the matter, and not to state jurisprudence. *See generally·A/S/J Ludwig Mowinckels Rederi v. Commercial Stevedoring Co., Inc.,* 256 F.2d 227, 229–30 (2d Cir.), *appeal dismissed,* 358 U.S. 801, 79 S.Ct. 9, 3 L.Ed.2d 49 (1958). We turn, then, to federal precedent governing construction of the quoted contractual indemnity provisions to ascertain whether they reflect an intention for Frank's to indemnify Cities when the two companies are found to be joint tortfeasors.

 The federal law on indemnity is generally stated as follows:

[A] contractual provision should not be construed to permit an indemnitee to recover for his own negligence unless the court is firmly convinced that such an interpretation reflects the intentions of the parties. This principle ... is accepted with virtual unanimity among American jurisdictions.

*United States v. Seckinger,* 397 U.S. 203, 211, 90 S.Ct. 880, 885, 25 L.Ed.2d 224 (1970). Under maritime law, a contract of indemnity must clearly and unequivocally show that the parties intended to afford protection to an indemnitee against the consequences of his own negligence. *Corbitt, supra,* states:

A contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties, but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage. Thus, for example, it is widely held that a contract of indemnity will not afford protection to an indemnitee against the consequences of his own negligent act unless the contract clearly expresses such an obligation in unequivocal terms. *See, e.g., United States v. Seckinger,* 397 U.S. 203, 211–13, 90 S.Ct. 880, 885–86, 25 L.Ed.2d 224 (1970); *Transcontinental Pipe Line Corp. v. Mobile Drilling Barge,* 424 F.2d at 691–92.

654 F.2d at 333. The rule requiring specificity of intent to indemnify for the indemnitee's own negligence is equally applicable where, as here, the concurring negligence of the indemnitor and the indemnitee has caused the injury. *Transcontinental Gas Pipeline Corp. v. Mobil Drilling Barge MR. CHARLIE,* 424 F.2d 684, 692 (5th Cir.), *cert. denied sub nom., Ocean Drilling & Exploration Co. v. Signal Oil & Gas,* 400 U.S. 832, 91 S.Ct. 65, 27 L.Ed.2d 64 (1970).

In *Dow Chemical Co. v. Tug THOMAS ALLEN,* 349 F.Supp. 1354 (E.D.La.1972), the court construed an indemnity provision under maritime law similar to the one at issue here. There, the court found both a barge owner (Dow) and a tug owner (Pitre) negligent in causing the accident and plaintiff's injuries. Dow sought indemnity from Pitre for Dow's own *concurrent* negligence in causing the collision on the basis of the following contract provision:

Contractor [Pitre] agrees to indemnify Dow and hold it harmless from and against all ... claims, demands, causes of action, suits or other litigation (including the defense thereof and payment of any judgment rendered in any such action) arising out of personal injury, including ... damage to property and occurring, incident to or arising out of the work performed by Contractor hereunder *except that in no instance shall Contractor be held responsible for personal injury* including ... damage to property *attributable to the sole negligence of Dow*, its agents, employees, representatives or subcontractors .... (Emphasis added).

349 F.Supp. at 1361. The court concluded that this provision was insufficient to require the indemnitor to hold the indemnitee harmless for the indemnitee's concurrent negligence. *Id.* at 1364.

 Despite the similarity of the clause in *Dow* and the clauses at issue here, we believe the better authority suggests that the Agreement unambiguously reflects the intent to have Frank's bear liability in instances of joint negligence. We also reject dicta in *Porche v. Gulf Mississippi Marine Corp.*, 390 F.Supp. 624 (E.D.La.1975), cited by plaintiff, implying that the indemnity agreement must expressly state such an intent. *Cf. Corbett, supra.*

In *Olsen v. Shell Oil Company*, 595 F.2d 1099 (5th Cir.), *cert. denied*, 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979), the plaintiff, an employee of the drilling contractor, was injured as a result of an explosion on a drilling platform owned by Shell. The contractor was found negligent and Shell was found strictly liable. The indemnity agreement between Shell and the contractor contained no express concurrent negligence language, yet the court granted indemnity to Shell where the contractor there agreed to indemnify Shell from

all claims, demands, and causes of action ... arising ... on account of ... injuries ... occurring, *in any wise incident to*, in connection with, *or arising out of contractor's negligence* in performing

the operations under this contract. (Emphasis added).

*Olsen, supra,* at 1103 n. 5.

In another case of concurrent negligence, *A/S/J Ludwig Mowinckels Rederi v. Commercial Stevedoring Co., Inc., supra,* the Second Circuit similarly found the indemnitor intended to fully indemnify the indemnitee for all damages caused "in any part" by the indemnitor's negligence. That contract provided that the stevedoring company would be responsible for any and all injury or damage occasioned by its own negligence during the loading and unloading operations. Such language was earlier considered ambiguous in *Porello v. United States*, 94 F.Supp. 952 (S.D.N.Y.1950), where the court looked to the surrounding circumstances before finding it reasonable to believe the parties agreed that the indemnitor alone should bear the loss.

 If we give the words of the indemnity provisions herein their literal meaning, as we must, *Olsen, supra,* at 1104, it is clear that Frank's accepted responsibility for the consequences of joint negligence. It expressly agreed, in paragraph 5, to indemnify Cities from injuries to any and all persons caused by performance under the Agreement, *"wheresoever or howsoever caused,"* and from all liabilities and judgments therefor. (Emphasis added.) Paragraph 5(a), one of three paragraphs limiting the application of the broad coverage granted in Paragraph 5, excludes "injuries ... caused by ... the sole negligence of Cities ...." An exception operates to take something out of a thing granted which would otherwise pass or be included. Black's Law Dictionary 502 (5th ed. 1979). This passage excuses Frank's from fulfilling the promise made in Paragraph 5 when Cities alone is negligent. Even strict interpretation and narrow reading do not permit disregard of the plain meaning of words. "A contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties ...." *Corbitt, supra.*

We hold that, under the Master Service Agreement, Frank's' and Cities' intention to have Frank's fully indemnify Cities in instances of concurrent liability is reasonably inferred. It is apparent, therefore, that the trial court did not err in construing the indemnity provisions of the Master Service Agreement and in entering a judgment based upon that interpretation. We overrule plaintiff's point of error two.

Plaintiff's third point of error asserts that the trial court erred in the construction and application of the terms of the Mary Carter Agreement between Frank's, Odeco, and plaintiff. By subpoint A, he urges that the Agreement was not the subject of this litigation and the judgment does not, therefore, conform to the pleadings, as required by Tex.R.Civ.Pro. 301. In his subpoint B, plaintiff contends that the court could not consider the indemnity portion of the Mary Carter Agreement because it had been stricken and was not admitted into evidence.

The court's judgment states that it found Cities entitled to complete indemnity from Frank's, under the Master Service Agreement, for its $202,000 obligation to plaintiff, and that it found Frank's entitled to complete indemnity from plaintiff under the Mary Carter Agreement. "[A]fter these circuitous obligations have been satisfied," states the judgment, "the Plaintiff is ultimately entitled to take nothing from Cities Service."

Plaintiff argues that the Mary Carter Agreement was admitted into evidence to show the jury that plaintiff had settled his causes with Frank's and Odeco and to show bias on the part of these settling defendants. He alleges that none of the pleadings support the court's consideration of that Agreement in reaching a final judgment, and he concludes that the court "had no business" construing the Agreement. We disagree.

It is true that none of the parties' pleadings mention a settlement between plaintiff and Frank's and Odeco. On the other hand, Plaintiff's Seventh Amended Original Petition, filed after the Mary Carter Agreement was signed, complains of Cities, Frank's, and Odeco, yet prays that judgment be rendered only against Cities, suggesting plaintiff's satisfaction with the settlement. Now, for the first time, plaintiff seeks to escape the burdens of that Agreement even though he earlier accepted the benefits. That Agreement, though not put in issue by the pleadings, clearly grew out of the accident made the basis of this suit and it represents a compromise and settlement of issues relating to the suit.

Plaintiff does not allege that the final judgment, which is founded in part upon the Mary Carter Agreement, is not in strict or literal compliance with that Agreement. *Vickrey v. American Youth Camps, Inc.*, 532 S.W.2d 292, 293 (Tex.1976). Neither does plaintiff contend that he disavowed his agreement to relieve Frank's of further liability prior to the rendering of the judgment. *See Barr v. Griffin*, 554 S.W.2d 305 (Tex.Civ.App.—Waco 1977) *appeal after remand, Griffin v. Barr*, 587 S.W.2d 477 (Tex.Civ.App.—Dallas 1979, no writ); *Leal v. Cortez*, 569 S.W.2d 536 (Tex.Civ.App.—Corpus Christi 1978), *appeal after remand*, 603 S.W.2d 262 (Tex.Civ.App.—Corpus Christi 1980, no writ). Plaintiff also does not allege any fraud or collusion involved in his entering into the Agreement. *See Gregory v. White*, 604 S.W.2d 402, 403 (Tex.Civ.App.—San Antonio 1980, writ ref'd n.r.e.), *cert. denied*, 452 U.S. 939, 101 S.Ct. 3081, 69 L.Ed.2d 953 (1981).

In the absence of an exception or objection, the trial court was empowered, by Tex.R.Civ.Pro. Rules 67 and 90, to consider the Mary Carter Agreement in reaching its legal conclusions, especially since the parties admitted in open court that the Agreement had been entered into. *See Westchester Fire Insurance Co. v. Alvarez*, 576 S.W.2d 771, 773 (Tex.1978); *Garrett v. City of Wichita Falls*, 329 S.W.2d 491, 494 (Tex.Civ.App.—Fort Worth 1959, no writ); 2 R. McDonald, *Texas Civil Practice* § 8.08 (1982). Since the issue was not contested, the sufficiency of the pleadings to support the take-nothing judgment vis-a-vis Frank's and plaintiff is not important. *See Pope v.*

*Powers*, 132 Tex. 80, 120 S.W.2d 432, 436 (1938). *Accord United States v. Katy Independent School District*, 333 F.Supp. 1325, 1330 (D.C.Tex.1971) (court may enforce settlement agreement while case is pending before it). We overrule plaintiff's complaint regarding the pleading omission.

▇▇▇ Next, plaintiff claims that, before the Mary Carter Agreement was admitted as Defendant's Exhibit No. 37, the court excised portions it deemed prejudicial and inflammatory. He concludes that the court could not base its final judgment on plaintiff's promise to indemnify Frank's since that part of the agreement was not in evidence.

The record contains an affidavit of the trial judge, described earlier under point one, certifying to this court that he admitted the Mary Carter Agreement in its entirety; that he excised certain provisions of that Agreement dealing with indemnity and insurance matters before the contract went to the jury; that, prior to excising those provisions, he reviewed and considered the entire Agreement; and that his consideration of its indemnity and insurance provisions made some of the basis of the final judgment.

The statement of facts reflects that plaintiff's counsel objected to the expunged form of the Mary Carter Agreement being submitted to the jury for its use during deliberations and sought to have the entire contract submitted instead. As with the Master Service Agreement, plaintiff not only did not object to the absence of the indemnity language from the Agreement but took a position at trial wholly contradictory to its position here. We find this conduct both an admission that the whole contract was in evidence and a waiver of the complaint. (See discussion under point of error one.) Plaintiff's point of error three is overruled.

Point of error four, asserted in a supplemental brief filed with leave of this court, challenges the court's entry of judgment against plaintiff "in total disregard of the jury verdict" when no motion to disregard the jury's verdict was filed by Cities.

An Amended Motion for Judgment filed by Cities asked that the court enter judgment "based upon the verdict of the jury showing more fully to the Court as follows...." It then recited the jury findings and explained the effect of the Master Service Agreement upon those findings. Finally, it moved for judgment in favor of Cities and against plaintiff and cross-plaintiff Frank's, and requested that the remaining cross-actions among the defendants be dismissed with prejudice. A Second Motion to Enter Judgment, filed by Cities after the court had stated it would enter judgment for Cities, simply informed the court of Cities' circulation of the proposed judgment to the parties and requested entry of judgment without the signature of plaintiff's counsel.

▇▇▇ Cities properly requested not that the court disregard the jury's fact findings, but that the court take them into consideration, along with the undisputed evidence of the Master Service Agreement and the Mary Carter Agreement. The jury merely finds the facts, and it is then for the court to pronounce the law on the facts thus found. Tex.R.Civ.Pro. 300, 301; *Universal Life Insurance Co. v. Cook*, 188 S.W.2d 791, 792 (Tex.Civ.App.—Waco 1945, no writ). Moreover, the court can, on its own motion, disregard answers to special issues that are immaterial. *Scott v. King*, 647 S.W.2d 394, 396 (Tex.Civ.App.—Dallas 1983, no writ). Certain of the special issue findings became immaterial in light of the court's understanding of the indemnity agreements. Point of error four is overruled.

The judgment is affirmed.