**TRILAND INVESTMENT GROUP, Jenncorp International, Inc., Stylus Holdings, Inc., Bright Hill Development and Realtron Holdings, Inc., Appellants,**

v.

**Elvin Ray WARREN, Vista Mortgage & Realty, Inc. and L & N Land Corporation, Appellees.**

No. 05–86–00225–CV.

Court of Appeals of Texas, Dallas.

June 9, 1987.

On Rehearing Dec. 15, 1987.

Mark T. Davenport, Doug K. Butler, Figari & Davenport, Dallas, for appellants.

Ronald L. McKinney, N. Henry Simpson, Emily G. Tobolowsky, Tobolowsky, Prager & Schlinger, Dallas, for appellees.

Before ENOCH,[1] C.J., and McCLUNG and JAMES,[2] JJ.

ENOCH, Chief Justice.

Controversy among these parties arose because of the relocation of a proposed road through a real estate development project. Elvin Ray Warren (Warren) sued Vista Mortgage & Realty, Inc., and L & N Land Corp. (referred to throughout as Vista) as well as Triland Investment Group and its co-investors, Jenncorp International, Inc., Stylus Holdings Inc., Bright Hill Development, and Realtron Holdings, Inc., (referred to throughout as Triland) asserting claims for breach of contract, reformation, rescission and fraud. Vista cross-claimed against Triland for indemnity under a written indemnity agreement and for fraud.

The case was tried to a jury. Before argument and submission to the jury and upon proper motion, the trial court instructed a verdict in favor Vista on its claim for indemnity against Triland. Based upon the jury's answers to the remaining special issues, the trial court rendered judgment in favor of Warren and against Vista and Triland, jointly and severally, for breach of contract and, further, rendered judgment in favor of Vista against Triland for fraud.

---

1. The Honorable Craig T. Enoch, Chief Justice, replaced Chief Justice Clarence A. Guittard. Chief Justice Enoch reviewed the record and listened to the tapes of oral argument and has participated in the decision in this case.

2. The Honorable John A. James, Jr., Justice, Retired, Court of Appeals for the Tenth District of Texas, sitting by assignment.

For the reasons stated below, we affirm the trial court's judgment as to Warren's breach of contract claim against Vista and Triland. We also affirm the trial court's judgment as to Vista's indemnity claim against Triland, but, we reverse the trial court's judgment and render a take nothing judgment on Vista's fraud claim against Triland.

The facts in this case are easily discerned. They show that Warren executed a contract for sale and exchange of certain land with Vista as a part of a land development project initiated by Vista. An essential provision of this agreement was the location of a proposed road expansion, "MacArthur Boulevard", which ultimately would establish the boundary between the remaining Warren tract and the resulting Vista tract. Vista, being unable to obtain certain developmental rights from a local utility district, and prior to closing on the sale with Warren, contracted to sell all the land within the project to Triland. This contract failed, however, to incorporate by reference or mention the MacArthur Boulevard provision contained in the Warren/Vista contract. At a date *subsequent* to the execution of this latter contract of sale, Triland executed an indemnity agreement with Vista agreeing, among other things, to assume the payment, performance, and timely satisfaction of all duties, obligations, and liabilities of Vista under the Warren Contract. Although there is some dispute as to whether Warren knew about Vista's sale to Triland, it is clear that Warren was not a party to the Vista/Triland closing. After Triland obtained title to the Vista property, it notified Warren that it would be building the road in question inside its own tract of land and not along the border with Warren's remaining tract of land. This suit then followed.

█ The issue in this case is not complex. Simply stated, is Triland obligated to build the road along the boundary adjoining Warren's land by the road location pro-

visions of the contract of sale between Warren and Vista?[3] We answer this question, "yes".

## THE WARREN CONTRACT

Warren owned approximately fifteen acres in the town of Coppell. Vista, the developer of a projected subdivision, approached Warren with a plat showing a proposed major thoroughfare crossing Warren's original tract. This major roadway was to be called MacArthur Boulevard. Vista offered to buy that portion of the Warren land lying west of the road site. According to this proposal, Warren would retain the land east of the road and, as part of the consideration for the transaction, Vista would convey to him a small tract east of the road which abutted his remaining tract on the north. Subsequently, the parties signed a contract of sale ("the Warren contract") by which Warren agreed to convey to Vista the westerly part of the Warren tract, (designated Tract A). A strip of land within Tract A, known as Tract B, was the land across which the proposed road was to be built. Tract A was understood to include Tract B and all of Warren's land west of Tract B; however, the outline of tract B was omitted from the exhibit attached to the contract. Testimony established Tract B's location to be across the most easterly portion of Tract A and directly abutting the western boundary of Warren's remaining property (designated Tract C). By agreement of the parties and thereupon judgment of the Court, the contract was reformed to specify Tract B's location on the exhibit.

In the contract, Vista agreed to pay Warren $250,000 and convey to Warren Tract D, a small tract lying east of the proposed road and immediately north of Tract C.

The following simplified plat shows the relative location of the four tracts described in the contract.

---

**3.** Whether Triland is bound by the terms of the contract of sale between Warren and Vista, whatever those terms may be, was not raised as a question in the trial court nor has it been raised as a ground for appeal in this Court.

Although unartfully written, the contract contemplated that the final location of the road, subject to certain conditions, determined the final boundary between Tracts A/B and C. Significantly, the contract provided for amending the legal description of the property because approval of the project plat by the City of Coppel was required, and, therefore, the location of the road *and, thus, the boundary of Tracts A/B and C* were subject to change.

### THE TRILAND CONTRACT

After signing the Warren contract, Vista applied to the city council for an appropriate zoning change which included approval of the proposed location of MacArthur Boulevard. The zoning change was approved. Vista also applied for admission of the proposed subdivision to the Coppell Municipal Utility District. This application, however, was denied. Vista then withdrew its zoning application and negotiated with Triland for a sale of the entire subdivision, including the land to be conveyed to Vista under the Warren contract.

After some negotiation, Vista and Triland agreed on the terms of the sale and signed a contract on November 4, 1983. The legal description in this contract made no mention of the possible change of the eastern boundary abutting Warren's remaining Tract C, but rather set out, without caveat, a metes and bounds description of the entire Vista project which included the initial eastern boundary of Tract A/B. The *Warren* sale was then closed on November 9, 1983 with Warren conveying to Vista 10.328 acres, being all of his land west of Tract C. Thereafter, on December 14, 1983, Triland executed an agreement assuming Vista's obligations to Warren and indemnifying Vista against any claims by Warren. Vista subsequently conveyed the entire project to Triland and closed the sale.

Several months later, Triland informed Warren that it intended to construct MacArthur Boulevard further west so that it would not abut Warren's remaining land. Warren objected, and when Triland obtained from the city council approval of a

zoning request including the relocated road, Warren filed this suit.

## BREACH OF CONTRACT

In points of error one through eight, appellant, Triland, asserts that the trial court erred in ruling that the Warren Contract was ambiguous and that, as a matter of law, Triland did not breach a contract regarding the location of MacArthur Boulevard.

In support of its position, Triland contends that although the Warren contract expressly precludes construction of the proposed road any "farther east than that shown as Tract B on the Exhibit Map attached," it does not restrict relocation of the road to the west. Therefore, argues Triland, the contract unambiguously permits relocation of the road westward without restriction. Warren, on the other hand, contends that the contract is ambiguous in this respect and, accordingly, the trial court properly submitted the issue of the parties' intent to the jury, which found in Warren's favor. Vista, however, contends that the Warren contract unambiguously requires the road to be constructed adjacent to Warren's remaining property.

■ We agree with Vista's position that the contract is unambiguous, therefore, the trial court erred in submitting the issue of intent of the parties to the jury. When a contract is unambiguous, there is no fact issue of intent to be considered. However, such error does not require reversal as this Court further agrees with Vista that the reading of this unambiguous contract requires the same result as the trial court judgment on this issue.

The applicable rules for the interpretation of written contracts are summarized by the supreme court in *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517 (Tex.1980) as follows:

In the interpretation of contracts, the primary concern of courts is to ascertain and give effect to the intentions of the parties as expressed in the instrument. *To achieve this object the Court will examine and consider the entire instrument so that none of the provisions will be rendered meaningless.* If a written instrument is so worded that a court may properly give it a certain or definite legal meaning or interpretation, it is not ambiguous. On the other hand, a contract is ambiguous only when the application of the applicable rules of interpretation to the instrument leave it genuinely uncertain which one of the two meanings is the proper meaning. If after applying the established rules of interpretation, a written instrument remains reasonably susceptible to more than one meaning, extraneous evidence is admissible to determine the true meaning of the instrument. [Emphasis added].

The Warren contract describes the "Property" to be conveyed to Vista as follows:

All of that certain tract of land containing approximately 11 acres ... in the City of Coppell, Dallas County, Texas, *designated Tract A and Tract B on the Exhibit Map attached hereto* as Exhibit A and incorporated herein by reference. [Emphasis in original].

In an addendum to the contract, the provisions affecting location of the road are as follows:

14. During the period after the full execution hereof and before the Closing date specified in paragraph 7 above, [Vista] shall have the right (a) to seek and obtain such zoning and rezoning of the Property as [Vista] deems appropriate and (b) to request approval of the extension of Allen Road [MacArthur Boulevard] as described in paragraph 15 below. [Warren] at [Vista's] request, shall join in any petitions and requests submitted by [Vista] to the applicable governing bodies in the City of Coppell, or otherwise, and shall cooperate in all reasonable respects with [Vista] in connection with such petitions and requests.

15. Within 2 calendar years after the Closing *[Vista] shall cause the proposed extension of Allen Road [MacArthur Boulevard] to be constructed and completed across the tract of land no farther east than that shown as Tract B on the Exhibit Map attached hereto as Ex-*

*hibit A.* [Warren] hereby agrees to cooperate in all reasonable respects with [Vista's] efforts to cause the applicable governing bodies in the City of Coppell, or otherwise, to approve the proposed extension of Allen Road [MacArthur Boulevard] and *to finalize the location and configuration of such extension across Tract B.* [Vista] will construct the ... extension as at least a 60 foot wide, paved throughfare [sic]. [Vista] will install sewer, water, and storm drainage utilities within the boundaries of the ... right-of-way in accordance with the requirements of the City approval of the applicable governing bodies of the City of Coppell, or otherwise [Warren's] sole cost. Tracts C and D will be restored to their original condition (i.e. condition prior to construction) after the construction of [the] ... road is completed.

16. Notwithstanding any other provision hereof to the contrary, *[Vista] shall have the right to terminate this contract if the City of Coppell elects to modify the location and configuration of the ... extension from that submitted jointly by [Vista] and [Warren] in such a manner as to reduce the area of the Property by one acre or more.* [Vista] may exercise the termination rights granted by this Paragraph 16 by delivering written notice to [Warren] within 5 calendar days after the decision to change the location and configuration of [the] ... road becomes final. *If the location and configuration of the ... road extension finally approved by the City Council does not reduce the area of the Property by one acre or more, then the most Easterly boundary of Tract B shall be the most Easterly of the Property and, if required, the legal description of the Property shall be modified to provide for any change to the boundaries of the Property.* [Emphasis added].

We conclude that when the entire contract is considered in a manner that gives meaning to all its provisions, it has a certain, definite meaning. That meaning is that Vista is obligated to build the road across Tract B, the most easterly part of Tract A, and adjacent to Tract C, Warren's remaining land. However, the location of Tract B, and, therefore, the westerly boundary of Tract C, is subject to relocation and correction westward, as required to meet the requirements of the City of Coppell.

The key language is in paragraph 15 of the addendum to the Warren contract. It affirmatively obligates Vista to construct the road "across the tract of land no farther east than that shown as Tract B on the Exhibit Map attached hereto." In this context, "across the tract of land" must mean across the land to be conveyed by Warren to Vista. It cannot mean Tract C, Warren's remaining land, because of the restriction, "no farther east than Tract B." Paragraph 15 further restricts the location of the road by requiring Warren to cooperate in Vista's efforts to obtain approval of the proposed road "and to finalize the location and configuration of such extension *across Tract B*" (emphasis added.)

Because of the language of paragraph 15, the relocation of the road must be within Tract B, the most easterly part of Tract A, and adjacent to Tract C.

This interpretation is mandated also by paragraph 16 of the addendum to the Warren Contract. It gives Vista the right to terminate the contract if the city elects to modify the location of the road from that submitted jointly by Vista and Warren "in such manner as to reduce the Property by one acre or more." The property to be conveyed to Vista, shown on the exhibit as Tract A, could be "reduced" only if the relocation westward of the road, and consequently Tract B, triggered an increase in the size of Tract C. If Tract A is "reduced," then Tract C must necessarily be increased.

By the convoluted, but adequate language of the contract, relocation of the road to the west beyond the limits of Tract B is restricted.

Thus, in light of all of the reasons mentioned, we conclude that the Warren contract is, as a matter of law, unambiguous

and requires the road to be constructed adjacent to Tract C. Triland's relocation and construction of the road far west of this planned location resulted in breach of Vista's obligations to Warren under the Warren contract. We overrule appellant, Triland's, points of error one through eight.

Consequently, the trial court's judgment in favor of Warren and against Triland for breach of contract is affirmed.

### FRAUD

Appellant's primary contention in points of error nine through twenty is that submission of special issues inquiring into fraud by Triland as to Vista was improper. Triland insists there was no evidence presented at trial of one or more of the elements necessary to establish fraud. More specifically, in point of error nine, Triland argues that the trial court erred in entering a judgment on special issues that were premised on the question of whether Vista relied on a misrepresentation by Triland and was thereby induced to close a sale which Vista was already contractually obligated to close.

Vista filed a cross-action against Triland for fraud pursuant to Texas Business and Commerce Code ("the Code") section 27.01, which provides that fraud in a real estate transaction consists of the following:

(2) false promise to do an act, when the false promise is

(A) material;

(B) made with the intention of not fulfilling it;

(C) made to a person for the purpose of *inducing that person to enter into a contract;* and

(D) *relied on by that person in entering into that contract.*

*TEX.BUS.COM.CODE* ₃ 27.01(a) (Vernon Supp.1986) [Emphasis added].

On November 4, 1983, Vista and Triland executed the contract for sale of the development in question to Triland. On December 14, 1983, contemporaneously with the closing of the sale, Triland executed an indemnity agreement in favor of Vista

whereby it agreed to assume all of Vista's "duties, obligations, and liabilities ... pursuant to the terms and conditions of ... (b) that certain Contract of Sale, dated August 22, 1983, by and between [Vista] and Ray Warren...."

Vista argues that at the time Triland executed the indemnity agreement, it had no intention of fulfilling its promise to assume all of Vista's obligations. It further contends that the indemnity agreement given to it by Triland induced Vista to *close* the sale of the project. Vista then concludes its argument by asserting that it never would have closed the sale had it known that Triland did not intend to build the road adjacent to Warren's remaining property as Vista was required to do under the Warren contract. Based upon the foregoing, Vista claims that Triland is guilty of fraud under Section 27.01 of the Code.

Vista recognizes that section 27.01 requires that it must have relied to its detriment on Triland's misrepresentation upon entering into the contract, but Vista construes the phrase "enter into" to include the closing of the sale. Vista argues, because the misrepresentation induced it to *close or consummate* the real estate sale, this was tantamount to inducing Vista to "enter into" the contract.

■ We disagree with Vista. It is significant that Vista does not argue nor do we find anywhere in the record before us that Vista and Triland changed their respective positions *after* the execution of the indemnity agreement. Neither does Vista argue nor do we find in the record any contractual right of Vista to refuse to close on the contract of sale if Triland did not execute the indemnity agreement.

Even if the indemnity agreement amounted to a misrepresentation, under the facts of this case it could not have, as a matter of law, *induced* Vista to close the sale. The basis of this conclusion is that the indemnity agreement was executed by Triland more than one month *after* Vista obligated itself to sell the development to Triland. Since Vista could not refuse to close the sale of the land to Triland for lack of an indemnity agreement, it cannot now

complain that it was wrongfully induced to close the sale by a representation about an indemnity agreement it received as a part of the closing.

The court in *Campbell v. Rushing*, 141 S.W. 133 (Tex.Civ.App.—Fort Worth 1911, writ ref'd), clearly stated the controlling law:

> If at the time the parties entered into the written contract there had been no fraud, the contract was then binding on both parties, and could not be set aside for the fraudulent representations of any one occurring afterward, since for obvious reasons such fraud could not have induced the contract. This is elementary.

141 S.W. at 134.

As supporting its argument, Vista relies upon *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183 (Tex.1977). In *Stone*, the court held that representations regarding easements left undisclosed as part of a title policy were actionable even though made after the contract of sale of land for which the title policy was being acquired had been executed. We do not find *Stone* controlling under the facts of the instant case. In *Stone*, the action asserted was against the title insurance company and its agent for representations made in connection with the purchase of the title policy. The issue was not addressed as to the liability of the seller of the property.

Triland's point of error nine is sustained. Because of our ruling on point of error nine, *points of error ten through twenty* need not be addressed. The trial court's judgment against Triland in favor of Vista based on fraud is reversed and judgment is rendered that Vista take nothing against Triland on the basis of fraud.

## INDEMNITY

By points of error twenty-one through twenty-three, Triland attempts to raise lack of consideration as a defense to its obligations under the indemnity agreement with Vista. As this issue was not pleaded, it is waived on appeal. TEX.R.CIV.P. 94. Appellant's points of error twenty-one through twenty-three are overruled. That portion of the trial court's judgment in favor of Vista and against Triland based upon the indemnity agreement is affirmed.

## ATTORNEYS' FEES

Triland, in points of error twenty-four through twenty-six, asserts error of the trial court in submitting Special Issue No. 4 regarding Warren's attorneys' fees without requiring a segregation of the attorneys' time between the cause of action for breach of contract, for which the fees could be awarded, and the claim of fraud, for which the fees could not be awarded. We conclude that the facts necessary for the proof of each of Warren's claims are so closely aligned that no segregation was necessary. *See Martco, Inc., v. Doran Chevrolet, Inc.*, 632 S.W.2d 927, 929 (Tex. App.—Dallas 1983, no writ); *see also Wilkins v. Bain*, 615 S.W.2d 314 (Tex.Civ.App. —Dallas 1981, no writ). Accordingly, points of error twenty-four through twenty-six are overruled. The award of Warren's attorney's fees by the trial court is affirmed.

## APPELLEE'S CROSS POINTS

Warren, by cross points of error one through seventeen, attempts to challenge various rulings of the trial court on the evidence pertaining to damages and on various other causes of action of Warren.

A review of cross points five through seventeen reveals complaints by Warren unrelated to the defense of the judgment or to the grounds of appeal raised by Triland. These points of error deal primarily with the trial court's refusal to submit certain causes of action to the jury. As they place Warren in the posture of an appellant, we conclude that Warren was required to file a cost bond, cash deposit, or affidavit in lieu thereof with the clerk within thirty days after the judgment was signed, or within ninety days after the judgment was signed if a timely motion for new trial was filed by any party. TEX.R. CIV.P. 356. The record in this case fails to disclose a cost bond, cash deposit, or affidavit being filed for this appeal by Warren. Consequently, this court lacks jurisdiction

to entertain these cross points. *Young v. Kilroy Oil Co. of Texas, Inc.*, 673 S.W.2d 236 (Tex.App.—Houston [1 Dist.] 1984, writ ref'd. n.r.e.). Warren's cross points five through seventeen are dismissed.

Warren's cross points of error one through four, however, are reasonably related to the points of error raised by Triland. These points deal with evidentiary matters pertaining to issues submitted to the jury and made a part of the judgment in this case. Therefore, Warren was not required to file a separate appeal bond in order to vest this Court with jurisdiction over those points. *Young*, Id. *See Dallas Electric Supply Co. v. Branum C.*, 143 Tex. 366, 185 S.W.2d 427 (1945) and *Travelers Indemnity Co. v. Pollard Friendly Ford Company*, 512 S.W.2d 375 (Tex.Civ. App.—Amarillo, 1974, no writ).

Warren asserts generally in points one through four that the trial court abused its discretion in excluding evidence of the value of the Warren land, assuming retail zoning.

By expert testimony, Warren attempted to adduce that, in reasonable probability, the zoning on Tract C would change from residential to retail within a reasonable period of time. This change, according to Warren, would enhance the value of the land. Consequently, had the jury heard this testimony, the damages found by the jury would have been significantly greater than what was actually found.

This Court has reviewed the extensive Bills of Exception in search of some testimony which would indicate that there existed a reasonable probability that zoning would change within a reasonable period of time. No such testimony exists.

Warren relies on a witness who finally testified after repeated questioning that the only basis he had to support his opinion that Warren's land would probably be rezoned retail was "[o]nly that other people have done it." This is not sufficient evidence to establish the reasonable probability that the current residential zoning would change to retail.

Evidence should be excluded relating to remote, speculative and conjectural uses as well as injuries which are not reflected in the *present* market value of the property. (emphasis added).

*State v. Carpenter*, 126 Tex. 604, 89 S.W. 2d 194, (1936).

The court in *Cravens v. Amarillo*, 309 S.W.2d 903 (Tex.Civ.App.—Amarillo, 1958, Writ dism'd) following the authority of *State v. Carpenter* affirmed the trial court's exclusion of expert testimony which "assumed non-existent buildings, non-existent crops, non-existent capitalization rates, on top of one presumption after another." *Cravens*, at 905–906.

Accordingly, we hold that the trial court did not abuse its discretion in refusing to allow such speculative testimony. Warren's cross points of error numbered one through four are overruled.

### TRIAL COURT JUDGMENT

As the respective parties in this appeal have neither raised as a point of error, nor called to our attention by way of motion, the failure of the trial court to accurately recite the list of parties involved in each of the adjudicatory portions of the judgment, we assume this was a mere inadvertence. Accordingly, we set out below a modification of the trial court's judgment solely for purpose of correcting the record in this case. The Judgment brought before this Court on appeal should read and is so corrected in pertinent part as follows:

ORDERED that Elvin Ray Warren have and recover judgment against Vista Mortgage & Realty, Inc.; L & N Land Corp.; Triland Investment Group; Jenncorp International, Inc.; Stylus Holdings, Inc.; Bright Hill Development Corp.; and Realtron Holdings, Inc.; jointly and severally, in the amount of $114,000.00, plus $75,000.00 in attorneys' fees, plus the further sum of $15,000.00 in the event of his successful appeal to the Court of Appeals (whether as Appellant or Appellee), plus the further sum of $10,000.00 in the event of his successful appeal to the Texas Supreme Court (whether as Petitioner or Respondent),

plus court costs, said judgment to bear interest at the rate of 10% per annum from the date of judgment until paid.

ORDERED that Vista Mortgage & Realty, Inc.; L & N Land Corp., have and recover judgment against Triland Investment Group, Stylus Holdings, Inc., Realtron Holding, Inc., Bright Hill Development Company, and Jenncorp International, Inc., jointly and severally for the total amount of the judgment against Vista Mortgage & Realty, Inc.; L & N Land Corp. and in favor of Elvin Ray Warren, together with all interest thereon, as set forth in the preceding paragraph. It is further

ORDERED that Vista Mortgage & Realty, Inc.; L & N Land Corp. have and recover judgment against Triland Investment Group, Stylus Holdings, Inc., Realtron Holding, Inc., Bright Hill Development Company, and Jenncorp International, Inc., jointly and severally, in the amount of $826,271.00, plus the sum of $15,000.00 for attorneys' fees in the event of its successful appeal to the Court of Appeals (whether as Appellant or Appellee), plus the further sum of $10,000.00 in the event of its successful appeal to the Texas Supreme Court (whether as Petitioner or Respondent), provided however that the judgment as to attorneys' fees in favor of Vista Mortgage & Realty, Inc. and L & N Land Corp. is without prejudice to their right to recover a greater amount of their attorneys' fees and expenses actually incurred if they exceed the amounts awarded in this judgment, plus court costs, said judgment to bear interest at the rate of 10% per annum from the date of judgment until paid.

As modified, this Court rules upon the trial court judgment as follows: the portion of the trial court's judgment awarding Vista damages in the amount of $826,271.00 plus attorneys' fees against Triland is REVERSED and judgment is RENDERED for Triland. The portions of the trial court's judgment awarding Warren $114,000.00 plus attorneys' fees against Vista and Triland and awarding Vista indemnity against Triland for these amounts is AFFIRMED.

## ON MOTION FOR REHEARING

This opinion supplements the opinion of this Court dated June 9, 1987. Triland Investment Group, Jenncorp International, Stylus Holdings, Inc., Bright Hill Development and Realtron Holdings, Inc. (all referred to as Triland) along with Vista Mortgage & Realty, Inc., and L & N Land Corporation (both referred to as Vista) and Elvin Ray Warren (Warren) filed Motions for Rehearing. Since we find no merit in Triland's and Warren's motions, they are DENIED. To the extent that this Court awards $76,271.00 as attorney's fees under the indemnity agreement to Vista and against Triland, Vista's motion is GRANTED. All other requests by Vista are DENIED.

In this case, Vista not only asserted a claim for attorneys' fees under an indemnity agreement (a contract), but also asserted a claim for damages for fraud (a tort) against Triland. In an instructed verdict, the trial court awarded Vista attorneys' fees, stipulated to be $76,271.00, against Triland under the indemnity agreement. In addition, in response to special issues, the jury awarded Vista $76,000 in actual damages and $750,000 in punitive damages on its fraud claim. From the record and statement of facts before us, it appears that, on its tort action, Vista's evidence of the amount of its actual damages consisted solely of the attorneys' fees it incurred as a result of this suit. These attorneys' fees were identical to the fees stipulated by the parties and made a part of the trial court's instructed verdict on the indemnity agreement.

Although a party may assert any and all causes of action it may have against another, it will be limited to only one recovery of damages. TEX.R.CIV.P. 48; *Jones v. Rainey*, 168 S.W.2d 507 (Tex. Civ.App.—Texarkana 1942, writ ref'd). Consequently, when the court rendered judgment, Vista was required to elect only one recovery. The trial court's judgment awarded Vista $826,271.00 against Triland.

It appears from the amount of this judgment that Vista elected the contract recovery of $76,271.00, but it was also awarded exemplary damages of $750,000.00 based on its fraud claim. That this was an improper election was not raised by any party to this appeal. We note, however, that it is settled law in this state that one cannot recover exemplary damages for a cause of action based on contract. *Texas National Bank v. Karnes,* 717 S.W.2d 901 (Tex.1986) (per curiam); *Jim Walter Homes, Inc., v. Reed,* 711 S.W.2d 617, 618 (Tex.1981). Vista was entitled to elect either $76,271.00 on the contract claim or $826,000.00 ($76,-000.00 + $750,000.00) on the fraud claim.

Under the facts of this case, because this Court reversed the trial court's award for fraud and rendered a take nothing judgment for Vista, nothing now hinders Vista in asserting its claim for the contract damages.[4] *See Chesshir v. First State Bank of Morton,* 620 S.W.2d 101 (Tex.1981). With all findings necessary to the resolution of this case being before the Court, this Court is authorized to render the judgment which should have been rendered in the trial court. TEX.R.APP.P. 80(b). Consequently, we hold that the judgment of this Court dated June 9, 1987, should be vacated and a new judgment rendered.

To the extent that the trial court's judgment awards Vista damages in the amount of $826,271.00 for fraud including exemplary damages against Triland, it is REVERSED and judgment is RENDERED for Triland. The portions of the trial court's judgment awarding Warren $114,-000.00 plus attorneys' fees against Vista and Triland and awarding Vista indemnity against Triland for these amounts are AFFIRMED. To the extent that the trial court's judgment awards Vista damages in the amount of $826,271.00 against Triland under the indemnity agreement, it is REFORMED to award $76,271.00 to Vista and against Triland and, as reformed, is AFFIRMED.

---

**4.** Throughout this litigation, Vista has consistently asserted a claim to its attorneys' fees on the basis of the indemnity agreement. While Triland has contested the application of the indemnity agreement to the facts of this case on various grounds, until its response to Vista's motion for rehearing, Triland did not contend that the indemnity agreement, if applicable, failed to authorize attorneys' fees as awarded to Vista by the trial court. In general, matters presented for the first time in a motion for rehearing cannot be considered. *See Watson v. Glens Falls Insurance Company,* 505 S.W.2d 793, 797 (Tex.1974); *McGuire v. Federal Deposit Insurance Corporation,* 561 S.W.2d 213 (Tex.Civ. App.—Houston [1st dist.] 1977, no writ). Furthermore, our own review of the language of the indemnity agreement suggests that it is sufficiently broad to support the trial court's conclusion that the indemnity agreement encompasses Vista's attorneys' fees.