**TAPATIO SPRINGS BUILDERS, INC., Plaintiff,**

v.

**MARYLAND CASUALTY INSURANCE COMPANY, Defendant.**

**Maryland Casualty Insurance Company, Counterclaim Plaintiff,**

v.

**Tapatio Springs Builders, Inc., Counterclaim Defendant.**

**No. Civ.A.SA98CA1078PMA.**

United States District Court, W.D. Texas, San Antonio Division.

Nov. 16, 1999.

---

634

Annalyn G. Smith, Bracewell & Patterson, L.L.P., San Antonio, TX, for Tapatio Springs Builders, Inc., plaintiff.

Christopher C. Strawn, Ball & Weed, San Antonio, TX, for Maryland Casualty Insurance Company, Assurance Company of America, defendants.

## *MEMORANDUM DECISION AND ORDER*

MATHY, United States Magistrate Judge.

Pursuant to the consent of the parties in the above-styled and numbered cause of action to trial by the undersigned United States Magistrate Judge and consistent with the authority vested in the United States Magistrate Judges under the provisions of 28 U.S.C. § 636(c)(1) and Appendix C, Rule 1(I) of the Local Rules for the Assignment of Duties to United States Magistrates, in the Western District of Texas, the following order is entered.

## I. *JURISDICTION*

The Court had diversity jurisdiction under 28 U.S.C. § 1332.

## II. STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff Tapatio Springs Builders, Inc. ("Tapatio") originally filed this action in the 73rd Judicial District Court of Bexar County, Texas on October 21, 1998.[1] Defendant Maryland Casualty Company ("Maryland Casualty")[2] and its subsidiary, Assurance Company of America ("Assurance"),[3] removed the cause to the United States District Court for the Western District of Texas on November 24, 1998.[4] In its second amended complaint, Tapatio alleged that by denying coverage for a fire loss, Assurance breached a contract for insurance and a duty of good faith and fair dealing as well as violated article 21.21 of the Texas Insurance Code and section 17.41, et seq., of the Texas Deceptive Trade Practices Act ("DTPA").[5] Assurance denied plaintiff's allegations, contended the insurance policy did not cover Tapatio's loss, asserted various affirmative defenses, and raised a counterclaim for reformation of the contract.[6] Tapatio answered the counterclaim, contending that Assurance was estopped from reforming the policy and denying coverage and had waived its right to assert absence of coverage.[7] Each side has moved for summary judgment.[8]

The following facts are undisputed. Tapatio is in the business of building custom homes in the San Antonio, Texas area.[9] In March 1997, Tapatio purchased from Bruce A. Barnard of Donegan Insurance Agency ("Donegan") a Builder's Risk Policy for which Assurance was the insurer.[10] Thereafter, Assurance, through Home Builder's Insurance Program ("HBIP"), sent Tapatio monthly rate reporting forms, which Tapatio was to complete and return to HBIP by the last day of the months in which they were received.[11] Initially, Tapatio was to list on the monthly rate report form all houses in its inventory, including previous construction, that is, houses in the process of being built, and new starts, or newly initiated construction, for the month preceding the month in which the form was received[12] and calculate the premium owed for this inventory.[13] In January 1998, HBIP began pre-printing previously reported construction on the monthly rate report forms, requiring the builder only to line through property to be excluded from insurance coverage and to list all new starts for the prior month, calculating the premiums on that basis.[14]

In February 1998, Tapatio began construction on a house at 18 Sendero Verde Drive, Bexar County, Texas ("Sendero property").[15] However, the Sendero property was not listed on Tapatio's monthly rate report forms covering inventory for

1. Docket no. 1.

2. In its notice of removal, defendant states plaintiff's original petition erroneously named defendant Maryland Casualty Insurance Company. Defendant's correct name is Maryland Casualty Company. Docket no. 1. Plaintiff's second amended complaint names only the Assurance Company of America as defendant. Docket no. 37.

3. Docket no. 35 at n. 1. Assurance Company of America is the entity that sold the insurance policy at issue in this case. Docket no 35 at n. 1.

4. Docket no. 1.

5. Docket no. 37.

6. Docket no. 35.

7. Docket no. 37 at 8.

8. Docket nos. 41 and 44.

9. Docket no. 37 at 2.

10. Docket no. 44, Exhibit 2 to Exhibit E at 4, 8; see docket no. 41 at 8.

11. Docket no. 44 at 2; see docket no. 41 at 4 n. 3.

12. In other words, January inventory was reported on the February monthly rate report form, February inventory on the March form, and so forth.

13. Docket no. 41 at 2, 4 n. 4; docket no. 44 at 2.

14. Docket no. 41, Exhibit 7 at 33–34; docket no 44, Exhibit 3 to Exhibit E at 33–34.

15. Docket no. 37 at 2.

the months of February, March, and April, nor were premiums paid for the Sendero property for those months.[16] On June 21, 1998, a fire destroyed the partially completed Sendero property.[17] The next day, Ray Shaw, a Tapatio construction manager, completed the monthly rate report form and wrote the premium check for May.[18] The destroyed Sendero property was listed for the first time on this report as a "new start.".[19] The June report, due at the end of July, listed the property as "previous construction" and a second premium accompanied the report.[20] Contending Tapatio had not complied with the reporting provisions of the insurance policy, Assurance denied Tapatio's claim for the Sendero property on July 31, 1998.[21] Assurance returned the two premium payments in June 1999.[22] Tapatio sued, Assurance counterclaimed, and the parties filed opposing motions for summary judgment.

Assurance has moved for summary judgment on the ground that the builder's risk policy at issue is not ambiguous, Tapatio did not comply with the continuous reporting requirement of the policy and, therefore, Tapatio is not covered for the loss at the Sendero property.[23] In addition, Assurance argues Tapatio has violated the "known loss" rule, prohibiting a person from procuring insurance coverage for a loss of which the person has knownledge.[24] Assurance also contends estoppel and waiver have no applicability to this case because insurance coverage may not be created by these theories.[25] Finally, Assurance argues that because Tapatio cannot establish coverage under the terms of the policy, summary judgment is proper as to the extra-contractual claims alleging violations of the insurance code and DTPA as well as for the alleged breach of the duty of good faith and fair dealing.[26]

Tapatio has moved for summary judgment on the ground that the policy as issued is ambiguous because it includes Non-reporting and Monthly Rate Endorsements which impose conflicting reporting requirements on the insured.[27] Because the policy is ambiguous, Tapatio argues it must be construed against the insurer.[28] Tapatio also argues that even if the policy is deemed to be a monthly reporting policy, all reporting requirements were satisfied and that Assurance, through HBIP, failed to list the Sendero property on the necessary monthly reporting forms.[29] Additionally, Tapatio claims entitlement to summary judgment because Assurance breached its duty of good faith and fair dealing and violated the insurance code and the DTPA.[30]

Tapatio and Assurance each have responded to the other's motion for summary judgment.[31] The responses essentially set forth the same arguments raised in the parties' motions for summary judgment.[32] Tapatio's response additionally advances facts it contends Assurance failed to provide.[33] Assurance objects to certain

16. Docket no. 41 at 2; docket no. 44, Exhibit B at 3.

17. Docket no. 41 at 4; docket no. 44 at 2–3.

18. Docket no. 44, Exhibit B at 3.

19. Docket no. 44, Exhibit B4.

20. Docket no. 41, Exhibit 5.

21. Docket no. 44, Exhibit A10.

22. Docket no. 44, Exhibit A9 and Exhibit E3 at 16–18.

23. Docket no. 41 at 5, 7.

24. *Id.* at 10–11.

25. Docket no. 41 at 11–17.

26. *Id.* at 17–18.

27. Docket no. 44 at 10.

28. *Id.*

29. *Id.* at 12–14.

30. *Id.* at 16–21.

31. Docket nos. 51, 57, and 58.

32. *Id.*

33. Docket no. 51 at 2–7.

of Tapatio's evidence and asks the Court to disregard the affidavits of Ray Shaw, John J. Parker, Jr., and Mikel Fitzgerald.[34] Assurance has further moved to exclude Fitzgerald's testimony because it does not satisfy the established standards for expert testimony.[35] Finally, Assurance has requested oral argument of its motion for summary judgment.[36] The motions for summary judgment, Assurance's objections and motions regarding the evidence, and Assurance's request to present oral argument are the subject of this Order.

### III. *ISSUES*

1. Whether the insurance policy is ambiguous.
2. Whether Tapatio complied with the terms of the insurance policy such that it is entitled to insurance coverage for the Sendero Property.
3. Whether estoppel or waiver bar Assurance from denying coverage.
4. Whether Tapatio is entitled to summary judgment on its extra-contractual claims.
5. Whether Assurance's evidentiary objections should be sustained.

### IV. *SUMMARY JUDGMENT STANDARD*

The standard to be applied in deciding a motion for summary judgment is set forth in Federal Rule of Civil Procedure 56, which provides in pertinent part as follows:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[37]

Mere allegations of a factual dispute between the parties will not defeat an otherwise proper motion for summary judgment. Rule 56 requires that there be no genuine issue of material fact.[38] A fact is material if it might affect the outcome of the lawsuit under the governing law.[39] A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[40] Therefore, summary judgment is proper if, under governing laws, there is only one reasonable conclusion as to the verdict; if reasonable finders of fact could resolve a factual issue in favor of either party, summary judgment should not be granted.[41]

The movant on a summary judgment motion bears the initial burden of providing the court with a legal basis for its motion and identifying those portions of the record which it alleges demonstrate the absence of a genuine issue of material fact.[42] The burden then shifts to the party opposing the motion to present affirmative evidence in order to defeat a properly supported motion for summary judgment.[43] All evidence and inferences drawn from that evidence must be viewed in the light favorable to the party resisting the motion for summary judgment.[44] Thus,

---

34. Docket no. 55.

35. Docket no. 54.

36. Docket no. 64.

37. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

38. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

39. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Thomas v. LTV Corp.*, 39 F.3d 611, 616 (5th Cir.1994).

40. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Wise v. E.I. DuPont De Nemours & Co.*, 58 F.3d 193, 195 (5th Cir.1995).

41. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

42. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548.

43. *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505.

44. *Hibernia Nat'l Bank v. Carner*, 997 F.2d 94, 97 (5th Cir.1993).

summary judgment motions permit the Court to resolve lawsuits without the necessity of trials if there is no genuine dispute as to any material facts and the moving party is entitled to judgment as a matter of law.[45]

## VI. ARGUMENTS AND CONCLUSIONS OF LAW

### A. THE INSURANCE POLICY IS NOT AMBIGUOUS.

#### 1. Overview

Tapatio contends it is entitled to summary judgment because its contract of insurance with defendant is ambiguous and must be strictly construed against Assurance. Alternatively, Tapatio argues it has complied with the policy's reporting requirements. On the other hand, Assurance claims summary judgment in its favor is proper because Tapatio failed to comply with the terms of an unambiguous policy. The Court will address the issue of ambiguity in this section of the Order and further address contract breach in the following section of the Order.

#### 2. Claim of Breach of Insurance Contract

In order to analyze the parties' motions for summary judgment, the Court necessarily must determine the nature of Tapatio's cause of action and the applicable law. Tapatio is contending that Assurance breached an insurance policy by denying coverage. Insurance policies are contracts.[46] The parties implicitly agree that Texas law governs the insurance contract claims.[47] The elements of breach of contract in Texas are:

(1) the existence of a valid contract;

(2) that plaintiff performed or tendered performance;

(3) that defendant breached the contract;

(4) that plaintiff was damaged as a result of the breach.[48]

In order to be successful on its motion for summary judgment, therefore, Assurance must show there is no genuine issue of material fact that it did not breach the insurance policy. Conversely, for Tapatio to prevail, it must show there is no genuine issue of material fact that Assurance breached the insurance policy.

Assurance argues that Tapatio failed to comply with the monthly reporting and payment requirements specified in the insurance policy and that because of such failure, the Sendero property was not covered by the existing insurance policy. Assurance claims Tapatio did not comply with the following reporting provisions of the Monthly Rate Endorsement attached to the policy:

SECTION E. ADDITIONAL CONDITIONS 4. REPORTING PROVISIONS is deleted and replaced by the following:

a. By the last day of each month you will report to us the total estimated completed value of all buildings in your inventory during the previous month. Inventory includes buildings you started as well as previously reported buildings. **The building must be reported each month for coverage to continue.** These

---

**45.** See Fields v. City of South Houston, Tex., 922 F.2d 1183, 1187 (5th Cir.1991).

**46.** See Grain Dealers Mut. Ins. Co. v. McKee, 943 S.W.2d 455, 458 (Tex.1997) (contract construction governs insurance policy); Republic Nat'l Life Ins. Co. v. Hall, 149 Tex. 297, 301, 232 S.W.2d 697, 699 (1950) (discussing life insurance policy).

**47.** Although this is not explicitly stated in the complaint, response, or insurance policy, Tapatio has alleged violations of Texas statutes and the parties consistently cite Texas case law in support of their summary judgment arguments.

**48.** Southwell v. University of Incarnate Word, 974 S.W.2d 351, 354–55 (Tex.App.—San Antonio 1998, pet. denied) (citing Wright v. Christian & Smith, 950 S.W.2d 411, 412 (Tex. App.—Houston [1st Dist.] 1997, no writ)); Garner v. Corpus Christi Nat'l Bank, 944 S.W.2d 469, 476 (Tex.App.—Corpus Christi 1997, writ denied), cert. denied, 525 U.S. 965, 119 S.Ct. 410, 142 L.Ed.2d 333 (1998); St. Paul Ins. Co. v. Rakkar, 838 S.W.2d 622, 629 (Tex.App.—Dallas 1992, writ denied).

reports are to be made on the form we provide for this purpose and must include the total estimated completed value including labor, overhead and materials and, if coverage is desired, *profit.*

The starting date for the purpose of this report is the date when you first put the building materials on the construction site.

b. **If, at the time of a *loss* you have not reported a building as required in this provision, we do not cover that building for that *loss*.**[49]

Assurance contends that because construction started in February 1998, these provisions obligated Tapatio to report the Sendero property on the reporting form for the first time by the end of March 1998 and each month thereafter until construction was completed.[50] As Tapatio did not report construction or pay the premium on the Sendero property until after the fire, Assurance argues it was under no obligation to provide coverage for the property.[51]

Tapatio, on the other hand, urges the Court to conclude the insurance policy is ambiguous, to construe the policy to provide coverage on the Sendero property, and to find that Tapatio complied with the terms of the insurance contract.[52] Tapatio contends the policy is ambiguous because it contains a Non-reporting Endorsement, which deletes the reporting provisions of the main policy, and a Monthly Rate Endorsement, which requires that construction inventory be reported on a monthly basis.[53] Because of the ambiguity, Tapatio argues the Court must strictly construe the policy against Assurance to provide coverage.[54]

### 3. *Ambiguity Analysis and Interpretation of the Insurance Policy*

In Texas, the interpretation of an insurance policy is governed by the general rules of contract construction.[55] The Court is concerned primarily with giving attention and effect to the intentions of the contracting parties as expressed in the contract.[56] The focus of the Court's inquiry in determining the meaning of a contract is the objective intention of the parties as evidenced in the contract itself.[57] The question of whether a contract is ambiguous is a question of law that is made by the Court.[58] If the court determines the contract is unambiguous, the court, not the jury, is to interpret the legal meaning of the contract's provisions.[59] If the court deems a contract not ambiguous, there plainly is no fact issue regarding the contracting parties' intent that need be considered by the jury.[60] But, if the contract

49. Docket no. 41 at 10 and exhibit 1; *see* docket no. 37, Exhibit B (emphasis added by Assurance). The Monthly Rate Endorsement also provides: "You must pay premiums based on the total estimated completed value of each building using the rate we furnish. Premium payment *must accompany* the report in order for the reported building to be covered" (emphasis added).

50. Docket no. 41 at 10.

51. *Id.*

52. Docket no. 44 at 10–15.

53. *Id.* at 10.

54. *Id.* at 11–12.

55. *McKee,* 943 S.W.2d at 458; *State Farm Life Ins. Co. v. Beaston,* 907 S.W.2d 430, 433 (Tex.1995); *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex.1994).

56. *R & P Enter. v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518 (Tex.1980); *Sidelnik v. American States Ins. Co.,* 914 S.W.2d 689, 691 (Tex.App.—Austin 1996, writ denied).

57. *Fuller v. Phillips Petroleum Co.,* 872 F.2d 655, 657 (5th Cir.1989).

58. *R & P Enterprises,* 596 S.W.2d at 518.

59. *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968); *Wahlenmaier v. American Quasar Petroleum Co.,* 517 S.W.2d 390, 393 (Tex.Civ.App.—El Paso 1974, writ ref. n.r.e.).

60. *Triland Inv. Group v. Warren,* 742 S.W.2d 18, 22 (Tex.App.—Dallas 1987), *rev'd on other grounds,* 779 S.W.2d 808 (Tex.1989).

is susceptible to two or more reasonable interpretations, the contract is ambiguous.[61] If the court determines the contract is ambiguous and conflicting parol evidence is considered to resolve the ambiguity, the question of the true intent of the parties becomes a fact issue for the jury.[62]

Under basic contract construction, the preferred interpretation is one that provides meaning to every provision and does not read any term out of the contract.[63] An endorsement cannot be read apart from the main policy, and the added provisions will supersede the previous policy terms to the extent they are truly in conflict.[64] In cases of conflict, the written or typewritten portions of an instrument control over the printed portion.[65] Although it is preferable to construe a policy to not create surplusage or leave portions of the policy useless or inexplicable, surplusage alone does not create an ambiguity.[66] Parol evidence of the parties' intent is not admissible to create an ambiguity, but the contract may be read in the light of the surrounding circumstances to determine whether an ambiguity exists.[67]

When a contract can be given a definite or certain legal meaning, it is unambiguous.[68] But if, after applying the rules of construction, the contract is subject to more than one reasonable interpretation, it is ambiguous and the interpretation that most favors coverage will be adopted.[69] "Whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered." [70]

The insurance policy in question includes the following documents: (1) the Inland Marine Declarations page; (2) Home Builders Builder's Risk Coverage Form; (3) Commercial Inland Marine Conditions; (4) a blank Home Builder's Risk Declarations (One-shot) form; (5) a blank Mortgage Holder's Clause form; (6) duplicate signature pages, and (7) six endorsements, including the Non-reporting and Monthly Rate endorsements.[71] The Court notes that the policy as a whole is so structured that an endorsement precedes the main body of the policy, has two duplicate pages, and includes the above listed

**61.** *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex. 1996) (citation omitted).

**62.** *Trinity Universal Ins. Co. v. Ponsford Brothers,* 423 S.W.2d 571, 575 (Tex.1968); *Amistad, Inc. v. Frates Communities, Inc.,* 611 S.W.2d 121, 127 (Tex.Civ.App.—Waco 1980, writ ref. n.r.e.).

**63.** *Mesa Operating Co. v. California Union Ins. Co.,* 986 S.W.2d 749, 753 (Tex.App.—Dallas 1999, pet. denied); *Eagle Life Ins. Co. v. G.I.C. Ins. Co.,* 697 S.W.2d 648, 651 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.).

**64.** *Mesa Operating Co.,* 986 S.W.2d at 754; *see Westchester Fire Ins. v. Heddington Ins. Ltd.,* 883 F.Supp. 158, 165 (S.D.Tex.1995), *aff'd,* 84 F.3d 432 (5th Cir.1996).

**65.** *Hedick v. Lone Star Steel Co.,* 277 S.W.2d 925, 929 (Tex.Civ.App.—Texarkana 1955, writ ref'd n.r.e.); *see, National Union Fire Ins. Co. v. Hudson Energy Co., Inc.,* 811 S.W.2d 552, 555 (Tex.1991) (endorsement generally supersedes printed portions of insurance policy); *Mesa Operating Co.,* 986 S.W.2d at 754; *Gomez v. Hartford Co.,* 803 S.W.2d 438, 440–42 (Tex.App.—El Paso 1991, writ denied); *United States Fire Ins. Co. v. Aetna Cas. & Sur. Co.,* 781 S.W.2d 394, 399 (Tex.App.—Houston [1st Dist.] 1989, no writ); *Tarrant County Ice Sports, Inc. v. Equitable Gen. Life Ins. Co.,* 662 S.W.2d 129, 131 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e).

**66.** *McKee,* 943 S.W.2d at 458.

**67.** *Balandran v. Safeco Inc. Co. of America,* 972 S.W.2d 738, 741 (Tex.1998); *National Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex.1995).

**68.** *McKee,* 943 S.W.2d at 458; *CBI Indus.,* 907 S.W.2d at 520.

**69.** *McKee,* 943 S.W.2d at 458; *Kelly Assocs., Ltd. v. Aetna Cas. & Sur. Co.,* 681 S.W.2d 593, 596 (Tex.1984).

**70.** *McKee,* 943 S.W.2d at 458; *CBI Indus.,* 907 S.W.2d at 520.

**71.** Docket no. 37, Exhibit B; docket no. 41, exhibit 1.

blank forms.[72] In other words, the policy was poorly structured when it was assembled. Even given the structure of the policy, however, the Court concludes the policy is not ambiguous.

To understand the Court's conclusion, relevant portions of the insurance policy must be described. The declaration page establishes that the policy was effective March 12, 1997, and is a "continuous reporting policy,"[73] that is, the policy will not expire so long as reports are made showing the need for coverage. The "Limits of Insurance" section allows the option of using either a Reporting Form (continuous policy) or One–Short Form (non-reporting form/single structure policy), but only the Reporting Form option is completed in the policy in question. In the "Forms Applicable" section, "x"'s are *typed* before listed forms, including the Monthly Rate Endorsement, which, thereby, are made part of the policy. Three forms are *typed* under "Other Forms." An "x" is not typed before the Non-reporting Endorsement form nor is the Non-reporting Endorsement listed in the Other Forms section.

One of the policy's termination provisions, section E3e, provides that coverage ends twelve months from the month a building is first reported to the insurer. The Non-reporting and Monthly Rate endorsements each state that the Home Builders Builder's Risk Coverage Form is being changed but that "[a]ll other terms and conditions of this policy remain unchanged." The Non-reporting Endorsement amends section E3e to provide that coverage ends at the expiration of the policy, which is shown on the declaration page to be continuous, and deletes the reporting provisions of section E4. The Monthly Rate Endorsement modifies section E3e to provide that coverage will end twenty-four months from the month when the property is first reported as long as the reporting provisions are satisfied and

adds section E3h which states that coverage will end when the insured stops reporting the building. Although the Monthly Rate Endorsement deletes the original reporting provisions of section E4, it adds seven reporting terms, including those at issue as set forth above. Finally, a blank Home Builders Builder's Risk Declarations (One–Shot) Form is included within the policy.

■ Given these provisions, Assurance asks the Court to interpret the policy as a monthly rate reporting policy, thereby reading the Non-reporting Endorsement included within the policy as surplusage. Tapatio, on the other hand, argues that the policy as assembled is ambiguous because it includes both the Non-reporting Endorsement and the blank Home Builder's Risk Declarations (One–Shot) form. But, importantly, Tapatio offers no interpretation of the policy as it was assembled for the Court's consideration. Instead, Tapatio argues that Assurance failed to type an "x" before Non-reporting Endorsement on the declaration page and made a mistake by typing an "x" in front of Monthly Rate Endorsement. Tapatio's argument that typed notations may be disregarded overlooks the established rule that when conflicts within a contract occur, typed or handwritten notations control. Assuming that Tapatio wishes the Court to interpret the contract as a non-reporting, one-shot policy, then the Monthly Rate Endorsement would be considered surplusage. Regardless of whether the Non-reporting Endorsement and blank One-shot Form are considered surplusage (as argued by Assurance) or whether the Monthly Rate Endorsement is considered surplusage (as argued by Tapatio), surplusage by itself does not create an ambiguity as a matter of law. Importantly, as discussed more fully below, only under Assurance's interpretation will there be a contract for insurance.

---

72. *Id.*

73. Docket no. 37, Exhibit B; docket no. 41, exhibit 1. The information in the next two paragraphs is from the same source.

■ If the Court were to conclude the contract is a non-reporting, one-shot policy, then most of the typed information appearing on the declaration page would be disregarded, something neither of the questioned endorsements expressly require. But, because the declaration page's one-shot section and the added one-shot form are blank, there is no method for determining the premium for a non-reporting policy. Price is an essential element of an insurance contract.[74] Therefore, to interpret this policy to be a non-reporting policy is not reasonable because to do so would be to conclude there was no agreement on an essential price element and, thus, no contract—something the parties clearly did not intend. The Court also notes that Tapatio has not claimed Shaw's failure to list the Sendero property on the report form was caused by ambiguity. Nor could Tapatio make such a claim. Shaw was not aware of any potential ambiguity because he did not read the policy.[75] When asked why the Sendero property was not reported, Shaw said he "just forgot it." [76]

In sum, the Court finds as a matter of law that the contract is unambiguous. Although reading the policy as a monthly reporting policy requires the court to consider the Non-reporting Endorsement and blank One-shot form to be surplusage, it is only if the policy is considered to be a monthly reporting policy that there is a method for computing a premium. The Court adopts the interpretation of the contract that favors finding a valid contract. Because the policy is unambiguous, its interpretation lies with the Court[77] and extrinsic evidence of the parties' intent need not be considered.[78]

If the Court were to hold otherwise and find that this policy is ambiguous, the Court would then examine parol evidence in order to determine, in the context of standard summary judgment burdens, the intentions of the parties as to the meaning of their contract. In this case, even if the Court were to consider the policy to be ambiguous, extrinsic evidence shows that the parties intended to include the monthly reporting requirements in the contract. Ray Shaw, the Tapatio construction manager responsible for obtaining insurance coverage,[79] had a long history of obtaining insurance through agent, Bruce Barnard.[80] In the 1990's, it was standard for Mr. Barnard to procure reporting policies for Mr. Shaw.[81] In February 1997, prior to purchasing the policy at issue, Shaw told Barnard that he had contacted at least one other insurance agency about the cost of a monthly reporting builder's risk policy, and he provided the competitor's information to Barnard.[82] The policy procured by Barnard was effective in March 1997, al-

---

74. *Hall,* 149 Tex. at 301–302, 232 S.W.2d at 699–700.

75. Docket no. 44, Exhibit B at 2.

76. Docket no. 41, Exhibit 4 at 98.

77. *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968).

78. *See Massey v. Massey,* 807 S.W.2d 391, 405 (Tex.App.—Houston [1st Dist.] 1991), writ denied, 867 S.W.2d 766 (Tex.1993) (parol evidence rule excludes consideration of other evidence of any prior or contemporaneous expressions of the parties relating to that transaction if there is a writing which is intended by the parties as a completed legal transaction.); *Murphy v. Dilworth,* 137 Tex. 32, 151 S.W.2d 1004, 1005 (1941) (terms of an unambiguous contract may not be altered by the introduction of parol evidence); *Remington Rand, Inc. v. Sugarland Indus.,* 137 Tex. 409, 153 S.W.2d 477, 484 (1941) ("[T]he expressions of the parties simultaneous with the making of the contract are never treated as 'surrounding circumstances.'") (citation omitted). *See also Sharp v. State Farm Fire and Casualty Ins. Co.,* 115 F.3d 1258, 1262 (5th Cir.1997) (prior versions of standardized policies and revision process not relevant unless contract is otherwise found to be ambiguous).

79. Docket no. 55, Exhibit C at 16.

80. Docket no. 45, Exhibit 1 at 53.

81. *Id.*

82. Docket no. 41, Exhibit 6 at 74–75.

most one and one-half years before the fire, and from May 1997 onward, Shaw completed monthly reporting forms without protest or prompting.[83] These uncontested facts indicate Shaw, an experienced business client, and Barnard, an experienced insurance agent, were in the practice of negotiating monthly reporting policies. Nothing in the record indicates that Shaw and Bernard ever discussed a one-shot policy. The uncontested facts also establish that Tapatio treated the policy in question as a monthly reporting policy, submitting monthly reports of inventory. Indeed, when the fire destroyed the Sendero property, Tapatio reported the loss on a form used only if its policy was a monthly reporting policy. The conduct of the parties supports the conclusion that the parties intended a monthly reporting contract. Indeed, as discussed above, the policy only provides a method for computing a premium for a monthly reporting policy.

In sum, as a matter of law the Court has determined that the parties' insurance contract is not ambiguous. Even if the Court were to conclude that the contract was ambiguous, there is no genuine issue of material fact that the parties' conduct shows they intended their policy to be a monthly reporting policy.[84]

## B. TAPATIO DID NOT COMPLY WITH THE POLICY'S REPORTING PROVISIONS.

Finding that the contract was for an unambiguous monthly reporting insurance policy does not fully determine the merits of the motions for summary judgment before the Court. The next issue to resolve is whether Tapatio complied with the reporting provisions such that it is entitled to insurance coverage on the fire-damaged Sendero property. If Tapatio failed to comply, then the Sendero property was not covered by the policy such that Assurance did not breach the policy when it refused to compensate Tapatio for non-covered losses.

■ Tapatio contends it reported construction on the Sendero property prior to beginning construction not through listing the property on the monthly reporting form but through a contact with its agent.[85] In February 1998, Shaw called Barnard to obtain an Evidence of Property Insurance ("Evidence"), a standard document required for closing on the construction loan for the Sendero property.[86] Assurance issued the Evidence to the financial institution on February 13, 1998, and construction began later in February.[87] Tapatio argues that when it orally requested the Evidence, it accomplished a report of the initiation of construction on the Sendero property.[88] However, there is no proof that the Evidence changed or added to the coverage provided by the policy. There is no proof that the Evidence negated any of Tapatio's obligations to report construction inventory on the monthly reporting forms and to pay premiums.[89] The Evidence states:

> This is evidence that insurance as identified below has been issued, is in force, and conveys all the rights and privileges afforded under the policy.... The policy is subject to the premiums, forms and rules in effect for each policy period.[90]

The Evidence guarantees coverage so long as the terms of the policy are satisfied. Although there is proof that a written

83. Docket no. 41, Exhibit 5.

84. *Jhaver v. Zapata Off–Shore Co.,* 903 F.2d 381, 384 (5th Cir.1990) (summary judgment not appropriate when evidence presents genuine issue of material fact regarding parties intent in contracting); *Fischbach & Moore, Inc. v. Cajun Electric Power Coop., Inc.,* 799 F.2d 194, 197 (5th Cir.1986); *Southern Natural Gas Co. v. Pursue Energy,* 781 F.2d 1079, 1081 (5th Cir.1986).

85. Docket no. 44 at 12.

86. Docket no. 44, Exhibit B at 2.

87. *Id.;* docket no. 37, Exhibit A.

88. Docket no. 44 at 12.

89. Docket no. 58 at 5.

90. Docket no. 37, Exhibit A.

letter fully reporting a new start accompanied by a premium payment would be sufficient to commence insurance coverage,[91] nothing in the record indicates that an oral request for proof of insurance would be viewed as a report.

Even assuming that the oral request for the issuance of the Evidence to the financial institution before the construction loan closed would or should be considered to be accepted as a report of a new start, Tapatio would not be entitled to coverage on the Sendero property. The policy clearly requires a report *and* a premium for every month a property is under construction. Asking that the insurance company issue the Evidence does not absolve Tapatio from paying a premium for the coverage. The undisputed facts in this case indicate that Shaw telephoned Barnard requesting the Evidence on the Sendero property but did not pay a premium. Shaw testified he did not believe the Evidence excused his need to report the property,[92] yet report forms for February through April never listed the property as a new start or previous construction and no premium was paid for the property during those months. Upon receiving the monthly report forms, it was incumbent on Tapatio to verify that all inventory was properly listed. That Shaw understood this obligation is evidenced by his marking through listed properties to be excluded from coverage.[93] Tapatio did not list the Sendero property on the May and June report forms and did not pay the appropriate premium until af-

ter the fire. Because coverage could not be established and maintained by the oral request alone, because the property was not continuously reported from February through June, and because the first report occurred only after the fire,[94] the Sendero property was not covered by the insurance policy at the time of the fire.

## C. ESTOPPEL AND WAIVER DO NOT APPLY TO THE FACTS OF THIS CASE.

■ Tapatio argues that estoppel and waiver bar Assurance from denying coverage on the Sendero property.[95] The estoppel and waiver claims are based on Tapatio's contention the property was reported when Shaw requested the Evidence and by Assurance's acceptance of two premium payments after the fire.

■ Although the doctrines of waiver and estoppel may operate to avoid conditions that would cause a forfeiture of an insurance policy, they will not operate to change, rewrite or enlarge the risks covered by the policy.[96] Estoppel cannot create insurance coverage where none exists by the terms of the policy.[97]

As discussed above, by the terms of the policy, the builder was required to report a new start *and* pay the premium in order for coverage to exist. In this case, even if requesting the Evidence were to be considered the equivalent of reporting a new start, no contract for insurance was created for the Sendero property because Tapa-

91. Docket no. 44, Exhibit E3 at 57–58.

92. Docket no. 41, Exhibit 4 at 118.

93. Docket no. 41, Exhibit 5.

94. *See Burch v. Commonwealth County Mut. Ins. Co.*, 450 S.W.2d 838, 839 (Tex.1970) (adopting general rule that "a contract of property insurance may, if the parties so intend, effectively protect against a loss occurring prior to issuance of the policy provided *neither* the applicant nor the insurer knew of the loss when the contract was made").

95. Docket no. 37 at 8. Although the estoppel and waiver claims are raised in response to Assurance's counterclaim to reform the con-

tract, two points apply to issues raised on summary judgment and are therefore discussed.

96. *Texas Farmers Ins. Co. v. McGuire*, 744 S.W.2d 601, 602 (Tex.1988); *Minnesota Mutual Life Ins. Co. v. Morse*, 487 S.W.2d 317, 320 (Tex.1972); *Swiderski v. Prudential Property & Cas. Ins. Co.*, 672 S.W.2d 264, 268 (Tex.App.—Corpus Christi 1984, writ denied); *Farmers Tex. County Mut. Ins. Co. v. Wilkinson*, 601 S.W.2d 520, 521 (Tex.Civ.App.—Austin 1980, writ ref'd n.r.e.).

97. *McGuire*, 744 S.W.2d at 602.

tio had not paid the premiums. Estoppel and waiver will not operate to create risk coverage were none existed.

The Texas Supreme Court has set forth the following elements for estoppel:

> There must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice.[98]

Shaw testified that the Evidence did not alter the report and premium requirements of the policy and that he understood coverage depended on compliance with these requirements.[99] Therefore, assuming that the language in the Evidence was a false representation about insurance coverage, nothing in the record indicates that relying on the alleged misrepresentation caused Tapatio to fail to report the property and to fail to pay the proper premium. Absent Tapatio continuously reporting the property and paying premiums, the Sendero property was not covered for the fire damage. Given the facts of this case, the doctrine of estoppel is not applicable.

■ Tapatio argues Assurance waived its right to deny coverage by accepting two premium payments for the Sendero property after the fire. Waiver requires proof of an intentional relinquishment of a known right that is either expressly made or indicated by conduct inconsistent with an intent to claim the right.[100] A party's intention is the key factor in determining questions of waiver, and in the absence of a clear intent expressed in words, acts, or conduct, waiver will be implied only to prevent fraud or inequitable consequences.[101] When waiver is to be implied, it is the burden of the party benefitting from a showing of waiver to produce conclusive evidence that the opposite party made an unequivocal manifestation of its intent to no longer assert its right.[102] This is a particularly onerous burden.[103]

■ In this case, the two premiums on the Sendero property were mailed to HBIP after the fire and were included within the total amount of premiums owed for all construction inventory for May and June. Assurance denied coverage on the Sendero property approximately one and one-half months after the fire—by the end of the month during which the second premium was received. The premiums for the Sendero property were refunded after this cause of action commenced. Other than HBIP's standard practice of processing checks as received, there is nothing in the record indicating an express or implied intent on Assurance's part to waive the reporting and payment requirements of the policy and to provide coverage on property already damaged when the first premium was paid. HBIP did not provide the insurance policy, could not decide to deny coverage, and had no reason to believe that the Sendero property was other

**98.** *Gulbenkian v. Penn,* 151 Tex. 412, 418, 252 S.W.2d 929, 932 (1952).

**99.** Docket no. 37, Exhibit 4 at 55–57, 118.

**100.** *United States Fidelity & Guar. Co. v. Bimco Iron & Metal Corp.,* 464 S.W.2d 353, 357 (Tex.1971); *Utilities Ins. Co. v. Montgomery,* 134 Tex. 640, 644, 138 S.W.2d 1062, 1064 (1940); *Cal–Tex Lumber Co., Inc. v. Owens Handle Co.,* Inc., 989 S.W.2d 802, 812 (Tex. App.—Tyler 1999, no pet.); *American Eagle Ins. Co. v. Nettleton,* 932 S.W.2d 169, 174 (Tex.App.—El Paso 1996, writ denied); *Texas Workers' Compensation Ins. Facility v. Personnel Serv., Inc.,* 895 S.W.2d 889, 894 (Tex. App.—Austin 1995, no writ); *State Farm Lloyds, Inc. v. Williams,* 791 S.W.2d 542, 551 (Tex.App.—Dallas 1990, writ denied).

**101.** *Cal–Tex Lumber Co.,* 989 S.W.2d at 812; *Stowers v. Harper,* 376 S.W.2d 34, 40 (Tex.Civ. App.—Tyler 1964, writ ref'd n.r.e.).

**102.** *G.H. Bass & Co. v. Dalsan Properties— Abilene,* 885 S.W.2d 572, 577 (Tex.App.—Dallas 1994, no writ); *Federal Deposit Ins. Corp. v. Attayi,* 745 S.W.2d 939, 947 (Tex.App.— Houston [1st Dist.] 1988, no writ).

**103.** *Id.*

than a new start in the month of May. Tapatio has presented no proof to raise a issue of material fact that Assurance, knowing of the fire, waived its right to deny coverage on a $295,000 property by accepting untimely reports and premiums totaling $224 [104] for the first time after the fire. There is no claim of fraud and Tapatio's own failures to perform will not support a finding that denying coverage is inequitable. Thus, waiver is not applicable to the facts of this case.

## D. TAPATIO CANNOT ESTABLISH ITS EXTRA–CONTRACTUAL CLAIMS.

 In *Universe Life Insurance Co., v. Giles*,[105] the Texas Supreme Court revised the common law standard for establishing a breach of the duty of good faith and fair dealing to parallel the statutory bad faith standard. Under the new standard, Tapatio must prove that Assurance denied the claim and that it "knew or should have known that it was reasonably clear that the claim was covered." [106] Generally, there can be no claim for bad faith when an insurer has denied a claim that is, in fact, not covered and has not otherwise breached the contract,[107] nor can there be a claim under the Texas Insurance Code for unfair claim settlement practices.[108]

This does not, however, change established principles regarding the duty of an insurer to timely investigate its insured's claims.[109] Nor does it exclude the possibility that in denying the claim, the insurer committed an act that was so extreme as to cause injury independent of the policy claim.[110] A misrepresentation claim is independent, and may exist in the absence of coverage.[111] To allege a misrepresentation claim under the DTPA, a plaintiff must plead a misrepresentation that caused actual damages.[112]

 In this case, the Court has found that the Sendero property was not covered by Assurance at the time of the fire. Nothing in the record indicates Assurance's conduct in denying coverage was so extreme as to cause injuries independent of the policy claim. Additionally, the claim was made in June 1998 and was denied by the end of the next month, indicating no delay. Therefore, as a matter of law, Tapatio did not violate the common law duty of good faith and fair dealing. Because the statutory and common law standards are now the same for bad faith, a finding that there is no common law violation as a matter of law also eliminates bad faith claims under the Texas Insurance Code and the DTPA as alleged by Tapatio.[113]

---

104. The two premiums paid were $112 each. Docket no. 41, Exhibit 5.

105. 950 S.W.2d 48 (Tex.1997); *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex.1995).

106. *Giles*, 950 S.W.2d at 54–55. *See also* Tex.Ins.Code.Ann. art. 21.21 § 4(10)(a)(ii) which lists as an unfair settlement practice the insurer's failure "to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability had become reasonably clear." *Id.*

107. *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex.1996); *Stoker*, 903 S.W.2d at 341.

108. *Love of God Holiness Temple Church v. Union Standard Ins. Co.*, 860 S.W.2d 179, 182 (Tex.App.—Texarkana 1993, writ denied).

109. *Stoker*, 903 S.W.2d at 341.

110. *Id.*

111. *See, e.g., Provident Amer. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 199–200 (Tex.1998).

112. *See* Tex.Bus. & Com.Code Ann. § 17.50(a) (Vernon Supp.1999).

113. *Stewart Title Guar. Co. v. Aiello*, 941 S.W.2d 68, 72 (Tex.1997); *Stoker*, 903 S.W.2d at 341 (negating claims for breach of contract and bad faith denial also negates extra-contractual insurance code and DTPA claims); *Muñiz v. State Farm Lloyds*, 974 S.W.2d 229, 233 (Tex.App.—San Antonio 1998, no pet.) (finding that insurer had reasonable basis for denying claim served as *res judicata* to all claims, common law and statutory, predicated on good faith and on liability becoming reasonably clear and also to any claim that the insurer had engaged in unfair trade practices in forcing plaintiffs to sue to recover); *see Higginbotham v. State Farm Mut. Auto.*

The Court has found there is no evidence that misrepresentations, if any, caused Tapatio's harm. Thus, Tapatio's misrepresentation claims under the DTPA fail as a matter of law.

## E. DEFENDANT'S EVIDENTIARY OBJECTIONS

Assurance has objected to and requested the Court to disregard certain affidavits offered in support of Tapatio's motion for summary judgment, including the affidavits of John J. Parker, Jr., Ray Shaw, and Mikel Fitzgerald.[114] The specific objections are: (1) Shaw's affidavit conflicts with his deposition testimony and is controverted by other testimony; (2) Parker's affidavit is based on factually unsupported conclusions; and (3) Fitzgerald's affidavit sets forth improper legal conclusions, is conclusory, and contradicts his deposition testimony.[115] In addition, Assurance has moved to exclude Fitzgerald's testimony for failure to satisfy the Daubert[116] standards for expert testimony.[117]

The Court, cognizant that affidavit evidence presented in support of a motion for summary judgment must be admissible under the rules of evidence,[118] overrules Assurance's objections to the affidavits of Shaw, Parker, and Fitzgerald. The affidavits and testimony have been considered to the extent they were relevant and were not conclusory, speculative, or unsubstantiated assertions.[119]

 With respect to Assurance's objections to Fitzgerald's expert testimony, the Fifth Circuit has applied the Daubert standards to summary judgment evidence.[120] In Daubert, the Supreme Court instructed trial courts to function as gatekeepers, to ensure that only reliable and relevant expert testimony is presented to the jury.[121] This role requires the trial court to undertake a two-part analysis. First, the court must determine whether the proffered testimony is reliable, requiring an assessment of whether the reasoning or methodology underlying the testimony is valid.[122] Second, the court must determine whether that reasoning or methodology was applied properly to the facts in issue.[123] The Daubert inquiry is fact-specific.[124] In determining reliability, courts consider factors such as whether the technique is able to be tested, whether it has been subjected to peer review and publication, whether there is a known or potential rate of error, and whether the relevant scientific community generally accepts the technique.[125] Each of these factors may not be relevant to a particular

---

Ins. Co., 103 F.3d 456, 460 (5th Cir.1997) (under Texas law, insurer which was found not to have acted in bad faith in denying insured's claims could not be held liable under either the Insurance Code or the DTPA since those extra-contractual tort claims required the same predicate for recovery as bad faith causes of action) (citations omitted).

**114.** Docket no. 55; docket no. 44, Exhibits A1, B, and D.

**115.** Docket no. 55 at 2–4.

**116.** Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

**117.** Docket no. 54.

**118.** FED.R.CIV.P. 32(a), 33(c), & 56(e).

**119.** Doe v. Beaumont Indep. Sch. Dist., 173 F.3d 274, 300 (5th Cir.1999) (en banc); Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1429 (5th Cir.1996) (en banc); see Hanchey v.

Energas Co., 925 F.2d 96, 97 (5th Cir.1990) (legal conclusions and general allegations will not support or defeat motion for summary judgment).

**120.** Rushing v. Kansas City Ry. Co., 185 F.3d 496, 506 (5th Cir.1999).

**121.** Daubert, 509 U.S. at 590–93, 113 S.Ct. 2786, 125 L.Ed.2d 469.

**122.** Daubert, 509 U.S. at 592–93, 113 S.Ct. at 2796; Curtis v. M & S Petroleum, Inc., 174 F.3d 661, 668 (5th Cir.1999).

**123.** Id.

**124.** Black v. Food Lion, Inc., 171 F.3d 308, 311 (5th Cir.1999).

**125.** Kumho Tire Co. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 1175, 143 L.Ed.2d 238 (1999); Daubert, 509 U.S. at 593–94, 113 S.Ct. 2786, 125 L.Ed.2d 469.

inquiry in a given case and the court may customize the reliability assessment to fit the proposed testimony.[126] Although *Daubert* addressed traditional "scientific" evidence, courts should consider the reliability of all experts, including those relying experience-based knowledge.[127]

 Assurance argues that Fitzgerald's testimony should be excluded because: (1) he did not rely on authoritative texts, materials, or other sources; (2) he had no reliable methodology for arriving at his opinions; (3) he had no prior experience with the builder's risk policies issued by Assurance; and (4) he had not seen facts such as those presented by this case and could not rely on prior experience.[128] As Tapatio responds, however, Fitzgerald is not offering novel scientific theories.[129] He is relying on twenty years of experience in the insurance industry in rendering his opinions.[130] His opinions are based on his years of handling, marketing, and issuing all types of insurance policies, including monthly reporting builder's risk policies.[131] In rendering his opinions, Fitzgerald relied on Assurance's own documents and his interpretations of them.[132] The Court notes that Fitzgerald has opined that the insurance policy in this case is ambiguous,[133] but he has not offered a reasonable interpretation of the policy for the Court's consideration. In addition, Fitzgerald is of the view that Tapatio complied with the reporting requirements of the policy[134] but does not explain why the required premium payment may be ignored. Finally, Fitzgerald

has an independent business relationship with Tapatio, a matter pertinent to the weight of the testimony.[135] That Fitzgerald might advise—perhaps as a matter of business relations—to construe a similar policy or situation in favor of a longstanding business client is understandable, but is irrelevant to the legal determination the Court is required to make. With the above-noted limitations in mind, the Court *denies* Assurance's motion to exclude Fitzgerald's testimony.

## V. CONCLUSION

The Court has determined as a matter of law that the insurance policy in question is not ambiguous. Because there are no genuine issues of material fact that Assurance did not breach the insurance policy, did not breach a duty of good faith and fair dealing, and did not violate the Texas Insurance Code or the Texas Deceptive Trade Practices Act and because estoppel and waiver do not apply to the facts of this case, Assurance's motion for summary judgment[136] is **GRANTED**, and Tapatio's motion for summary judgment[137] is **DENIED**. Assurance's objections[138] to the affidavits of Shaw, Parker, and Fitzgerald are **OVERRULED**. Assurance's motion to exclude Fitzgerald's expert testimony[139] is **DENIED**. All other relief sought by the parties is **DENIED AS MOOT**.[140]

**IT IS SO ORDERED.**

126. *Id.*

127. *Kumho Tire,* 526 U.S. at ——, 119 S.Ct. at 1176; *Food Lion, Inc.,* 171 F.3d at 311.

128. Docket no. 54 at 2.

129. Docket no. 62 at 3.

130. *Id.,* Exhibit at 10–38.

131. *Id.*

132. *Id.* at 44–59.

133. *Id.* at 87.

134. *Id.* at 109.

135. *Id.* at 38.

136. Docket no. 41.

137. Docket no. 44.

138. Docket no. 55.

139. Docket no. 54.

140. Assurance's motion for oral argument (docket no. 64) was denied on November 2, 1999 (docket no. 66).