**Donald VAN MARCONTELL,
Appellant**

v.

**Steven C. JACOBY, Appellee.**

**No. 05–07–00991–CV.**

Court of Appeals of Texas,
Dallas.

Aug. 6, 2008.

Charles W. McGarry, Law Office of Charles McGarry, Dallas, for Appellant.

Bruce E. Bagelman, Law Office of Bruce Bagelman, P.C., Dallas, for Appellee.

Before Justices MOSELEY, FRANCIS, and LANG.

## OPINION

Opinion by Justice LANG.

Donald Van Marcontell appeals the trial court's judgment in favor of Steven C. Jacoby on Jacoby's claims for negligent misrepresentation and fraud respecting the purchase of a house, and awarding Jacoby actual damages in the amount of $48,300. Jacoby claims the misrepresentations were made by Marcontell after the contract to purchase was made, but before the sale was closed.

Marcontell raises five issues on appeal arguing the trial court erred because: (1) the findings of fact do not support the causes of action pleaded by Jacoby; (2) the evidence is insufficient because there is no evidence to support the trial court's findings of fact that Jacoby relied on a material misrepresentation made by Marcontell when entering into the contract to purchase the property; (3) the evidence is insufficient because there is no evidence to support the trial court's findings of fact that Jacoby relied on Marcontell's concealment of a material fact when he entered into the contract to purchase the property, nor did Jacoby have a right to terminate the contract to purchase the property after the contract was entered into; (4) the evidence is insufficient because there is no evidence to support the trial court's conclusion that Marcontell had a legal duty to disclose information to Jacoby; and (5) the evidence is insufficient because there is no evidence to support the trial court's finding of fact that Jacoby's actual damages were in the amount of $48,300.

Jacoby claims that Marcontell's alleged misrepresentations or failure to disclose information induced him *to close* on the purchase of the property, constituting negligent misrepresentation and fraud. Jacoby's claims are not actionable on this record. Jacoby had no right to terminate the contract to purchase the property for any alleged misrepresentation or omissions occurring after he and Marcontell entered into the contract. The evidence is legally insufficient to support the trial court's findings of fact to support Jacoby's claims of negligent misrepresentation and fraud. The trial court's judgment is reversed and

a take-nothing judgment is rendered against Jacoby.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2004, Marcontell purchased a house at 1716 Winding Hollow Lane, McKinney, Texas and leased it to Kristie Henderson. The lease included an option to purchase the property for $309,000. Henderson lived in the house with her boyfriend, Kevin Riley, until January 2005 when Henderson moved out. Henderson told Marcontell she was moving out, she and Riley had "a pretty nasty break-up," and she could no longer afford to make her lease payments because Riley was stealing her money. Also, Henderson told Marcontell that Riley was never going to pay him rent, he would have to evict Riley, and Riley had been foreclosed on in the past.

Marcontell reached an agreement with Riley, a contractor, permitting him to stay in the house and make repairs in lieu of rent. However, Marcontell did not enter into a written lease with Riley. In addition, Marcontell agreed to pay Riley a finder's fee if he could locate a buyer for the property willing to purchase it for more than $309,000.

Meanwhile, Mike Andrews, a real estate agent, informed his client, Jacoby, that Marcontell's property might be for sale. He told Jacoby the property had a tenant, Riley, who was willing to enter into a lease and a purchase option. Andrews told Jacoby that Riley's girlfriend, Henderson, who was the lessee, had moved out. Also, Andrews told Jacoby he had done some business with Riley in the past and, when Jacoby asked Andrews for his opinion of Riley, Andrews stated he thought Riley was "a nice guy." Jacoby was shown photographs of the interior and exterior of the house by Andrews, and Jacoby drove by the property, but did not enter the house.

Relying on Andrews's representations and photographs, Jacoby decided to purchase the property. Jacoby talked to no one about the property, other than Andrews, prior to submitting the offer to purchase the property and did not meet with Riley. Further, Jacoby did not ask Andrews if he had verified Riley's employment history, rental history, or credit record, or ask Andrews whether he believed Riley was capable of making the payments in the "lease-purchase option." There is nothing in the record indicating with whom Marcontell spoke before signing the contract, except that the offer to purchase the property was conveyed by Andrews on Jacoby's behalf.

On February 15, 2005, on behalf of Jacoby, Andrews e-mailed Riley a lease agreement and stated once Riley signed the lease, he would prepare a contract and submit it to Marcontell. Jacoby and Riley also entered into a purchase option, where Riley agreed to pay $15,000 as consideration for an option to purchase the property for $360,000. Although Marcontell was aware Jacoby was going to lease the property to Riley, he did not participate in the lease or purchase option negotiations between Andrews and Riley.

On February 16, 2005, on behalf of Jacoby, Andrews e-mailed Marcontell a contract for the purchase of the property for $335,000. On February 18, 2005, Jacoby and Marcontell entered into a contract for the purchase of the property. On February 21, 2005, Andrews sent Marcontell a revised contract raising the purchase price to $345,000 so Jacoby could include his closing costs in his loan. The only contingency in the contract to purchase the property was a third-party financing contingency. On February 23, 2005, Marcontell e-mailed Andrews stating he would provide a signed statement "ending [his] contract with the current tenant as soon as

[he] can find her to sign it," and stating he had "spoken to her so [Andrews] should get it by weeks end."

In March 2005, approximately a month before closing, Jacoby met with Marcontell for the first time because there were some changes to the contract that required Marcontell's signature. During their meeting, Jacoby inquired into Riley's character. Marcontell responded that Riley was "a good guy."

Also, before closing, Riley asked Marcontell to fund the $15,000 purchase option fee Riley was to pay Jacoby because Riley was waiting to be paid on a couple of large contracts and he did not want to "hold up" the closing. Jacoby had stated he would not close on the sale of the property with Marcontell, unless Riley paid the purchase option fee. Marcontell agreed to pay Jacoby the $15,000 purchase option fee on behalf of Riley at closing. Marcontell deducted the $15,000 from the amount of the finder's fee Marcontell agreed he owed Riley. Marcontell told Jacoby he was funding Riley's $15,000 purchase option fee and indicated he would "work that out with [Riley] later." Jacoby did not ask any questions regarding Marcontell's agreement with Riley to fund the $15,000 purchase option fee and Marcontell did not provide any specific details about it.

The sale closed on April 8, 2005. Immediately before closing, Jacoby asked Marcontell if Riley paid his rent on time. Marcontell hesitated and looked down, then responded "he pays; he pays in chunks."[1] Jacoby construed Marcontell's response to mean that Riley paid his rent late. At closing, Marcontell and Jacoby signed an amendment to the contract reducing the price of the property to $341,700. Also, at closing, Marcontell paid Jacoby, on Riley's behalf, the $15,000 purchase option fee.

After Jacoby closed on the sale, Riley failed to pay rent and Jacoby evicted him. Then, after Riley was evicted, Jacoby inspected the house, and found it to be in worse condition than depicted in Andrews's photographs. Jacoby admitted the damage was done after he purchased the house.

Jacoby sued Marcontell for statutory fraud, negligent misrepresentation, and fraud. Specifically, he claimed Marcontell: (1) represented to him that the property was rented and Riley, the tenant, was in good standing and regularly paying rent; and (2) failed to disclose Henderson advised Marcontell that she was moving out, Riley would not pay rent, and she believed he would have to evict Riley.

The case was tried before the court. At the conclusion of the trial, Jacoby withdrew his claim for statutory fraud. The trial court rendered a judgment in favor of Jacoby on his claims for negligent misrepresentation and fraud, and awarded Jacoby actual damages in the amount of $48,300.

## II. SUFFICIENCY OF EVIDENCE TO SUPPORT FINDINGS OF RELIANCE

In issues one through three, Marcontell argues the trial court erred because: (1) the findings of fact do not support the causes of action pleaded by Jacoby; (2) the evidence is insufficient because there is no evidence to support the trial court's findings of fact that Jacoby relied on a material misrepresentation made by Marcontell when entering into the contract to purchase the property; and (3) the evidence is insufficient because there is no evidence to support the trial court's findings of fact that Jacoby relied on Marcontell's conceal-

---

1. Marcontell denied having this conversation with Jacoby.

ment of a material fact when he entered into the contract to purchase the property, nor did Jacoby have a right to terminate the contract to purchase the property after the contract was entered into. Marcontell challenges the sufficiency of the evidence to support the trial court's findings of fact nos. 9 and 13, which state:

9. [Jacoby] acted in reliance upon the representations made by [Marcontell] and [Marcontell's] failure to disclose material facts.

13. [Jacoby] relied upon [Marcontell's] negligent communications in closing on the purchase of the property.

These findings of reliance support the trial court's conclusions of law nos. 1 and 2, which state:

1. [Marcontell's] conduct constituted fraud.

2. [Marcontell's] conduct constituted negligent misrepresentation.

Marcontell contends there is no evidence he made any misrepresentations or failed to disclose any material facts before he entered into the contract with Jacoby. He claims the evidence demonstrates the opposite because Jacoby admitted he reached a lease agreement with Riley before offering to purchase the property from Marcontell, he relied on Andrews's representations and photographs when deciding to purchase the property, and he assumed Riley was paying rent to Marcontell. Also, Marcontell asserts that, even if Jacoby relied on his representations and alleged failure to disclose material facts before closing, Jacoby was obligated to close because before any representations were made, Jacoby had already contracted to purchase the property.

Jacoby responds the basis of his claims was that Marcontell's alleged misrepresentations or omissions induced him *to close* on the sale of the property. Jacoby con-

tends the evidence shows he would not have closed on the property if Marcontell had not made misrepresentations and failed to disclose materials facts. Jacoby does not argue there was fraud at the time he entered into the lease with Riley or the contract with Marcontell.

## A. Standard of Review

Findings of fact in a case tried to the court have the same force and effect as jury findings. *See Walker v. Anderson,* 232 S.W.3d 899, 907 (Tex.App.-Dallas 2007, no pet.); *Pulley v. Milberger,* 198 S.W.3d 418, 426 (Tex.App.-Dallas 2006, pet. denied). Unchallenged findings of fact are binding on an appellate court, unless the contrary is established as a matter of law or there is no evidence to support the finding. *See McGalliard v. Kuhlmann,* 722 S.W.2d 694, 696 (Tex.1986); *Walker,* 232 S.W.3d at 907; *Mullins v. Mullins,* 202 S.W.3d 869, 874, 876–77 (Tex.App.-Dallas 2006, pet. denied). However, when an appellant challenges a trial court's findings of fact, an appellate court reviews those fact findings by the same standards it uses to review the sufficiency of the evidence to support a jury's findings. *See Walker,* 232 S.W.3d at 907; *Pulley,* 198 S.W.3d at 426.

When an appellant attacks the legal sufficiency of an adverse finding on an issue for which he did not have the burden of proof, he must demonstrate there is no evidence to support the adverse finding. *See Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983); *Walker,* 232 S.W.3d at 907; *Pulley,* 198 S.W.3d at 426. A legal sufficiency review of a no-evidence point must credit the favorable evidence if a reasonable fact-finder could and disregard the contrary evidence unless a reasonable fact-finder could not. *See Kroger Tex. Ltd. v. Suberu,* 216 S.W.3d 788, 793 (Tex.2006);

*City of Keller v. Wilson,* 168 S.W.3d 802, 807 (Tex.2005). An appellate court will sustain a no-evidence point when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Marathon Corp. v. Pitzner,* 106 S.W.3d 724, 727 (Tex.2003); *see Wilson,* 168 S.W.3d at 807.

Anything more than a scintilla of evidence is legally sufficient to support a trial court's finding. *See Marathon,* 106 S.W.3d at 727. However, a challenge to the legal sufficiency of the evidence will be sustained when the evidence offered to establish a vital fact does not exceed a scintilla. *See Kroger,* 216 S.W.3d at 793; *Wilson,* 168 S.W.3d at 810. Evidence does not exceed a scintilla if it is so weak as to do no more than create a mere surmise or suspicion that the fact exists. *See Kroger,* 216 S.W.3d at 793.

## B. Applicable Law

■ The elements of negligent misrepresentation are: (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *See Fed. Land Bank Ass'n of Tyler v. Sloane,* 825 S.W.2d 439, 442 (Tex.1991); *Prospect High Income Fund v. Grant Thornton, L.L.P.,* 203 S.W.3d 602, 614 (Tex.App.-Dallas 2006, pet. denied). The elements of fraud are:

(1) a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made the statement recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act on it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *See Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 211 n. 45 (Tex.2002); *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 47 (Tex.1998); *see also* Tex. Bus. & Com.Code Ann. § 27.01 (Vernon 2002). Reliance is a necessary element of both negligent misrepresentation and fraud. *See Prospect High,* 203 S.W.3d at 618. A plaintiff establishes reliance by showing the defendant's acts and representations induced him to either act or refrain from acting, to his detriment. *Id.*

■ If a contract does not give a party the right to refuse to close on the sale because of a specific condition, a party may not refuse to close on the sale of land due to the existence of that condition. *See Triland Inv. Group v. Warren,* 742 S.W.2d 18, 24–25 (Tex.App.-Dallas 1987), *rev'd on other grounds* 779 S.W.2d 808 (Tex.1989). As a result, if at the time the parties entered into a written contract there had been no fraud or misrepresentation, the contract is binding on both parties and cannot be set aside for the representations of anyone occurring afterward because such representations could not have induced the contract. *See Triland,* 742 S.W.2d at 25; *Campbell v. Rushing,* 141 S.W. 133, 134 (Tex.Civ.App.-Fort Worth 1911, writ ref'd).

## C. Application of the Law to the Facts

■ The record shows Jacoby entered into a lease with Riley before contracting

with Marcontell to purchase the property, i.e, approximately a week before submitting a contract to Marcontell, Jacoby "determined the amount of rent" Riley would pay, and the day before a contract was submitted to Marcontell, Andrews e-mailed Riley a lease agreement and stated once Riley signed the lease he would submit a contract to Marcontell. Marcontell did not participate in the lease or purchase option negotiations between Riley and Andrews, Jacoby's real estate agent. In addition, Jacoby testified he relied on Andrews's representations and photographs in making his decision to purchase the house, and he did not talk to anyone other than Andrews prior to purchasing the property.

Jacoby claims Marcontell's alleged misrepresentations or alleged failure to disclose material facts occurred on the two occasions they met. The first time they met was after the contract was signed and approximately one month before closing. During that meeting, Jacoby inquired into Riley's character and Marcontell told Jacoby that Riley was "a good guy." The second time they met was at the closing. During the second meeting, Jacoby stated Marcontell told him that Riley paid his rent "in chunks."

Even assuming Marcontell misrepresented facts or failed to disclose information, those alleged acts or omissions did not occur until after Jacoby entered into the lease with Riley and the contract to purchase the property with Marcontell. Jacoby does not argue the contract provided him a right to refuse to close on the contract of sale if Riley was not in good standing and regularly paying his rent, or that Marcontell had reason to believe Riley would not pay rent and the lessor would have to evict him. We agree with Marcontell that, on this record, Jacoby had no right to terminate the contract, and his claims are unsupported by a legal duty.

We conclude, on this record, Jacoby's claim that Marcontell's alleged misrepresentations or failure to disclose information induced him *to close* on the purchase of the property is not actionable because: (1) the contract is binding on both parties since there was no evidence of misrepresentations by Marcontell at the time Jacoby and Marcontell entered into the contract; and (2) the contract did not give Jacoby the right to refuse to close as a result of Marcontell's subsequent misrepresentations or failure to disclose information. *See Triland*, 742 S.W.2d at 25 (citing *Campbell*, 141 S.W. at 134). Further, we conclude the evidence of the representations or omissions claimed by Jacoby does not support any basis on Jacoby would be excused from closing on the purchase of the property and concluding the sale. Accordingly, the evidence is legally insufficient.

Issues one through three are decided in favor of Marcontell. Because we have decided issues one through three in Marcontell's favor and reliance is a necessary element of both negligent misrepresentation and fraud we need not address Marcontell's remaining issues. *See Prospect High*, 203 S.W.3d at 618.

## III. CONCLUSION

Jacoby's claims as presented in the record are not actionable. Accordingly, the evidence is legally insufficient to support his claims.

The trial court's judgment is reversed and a take-nothing judgment is rendered against Jacoby.