

# Fourth Court of Appeals
## San Antonio, Texas

**MEMORANDUM OPINION**
**ON REHEARING**

No. 04-13-00007-CV

**WOODLAKE MANAGEMENT SERVICES L.L.C.**, and John Augustin Butuza,
Appellants

v.

**RICHARD J. BONJORNO AND JUDY C. BONJORNO REVOCABLE TRUST, DATED
JUNE 9, 1983**, and Richard Bonjorno,
Appellees

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CI-13311
Honorable Laura Salinas, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:       Catherine Stone, Chief Justice
               Sandee Bryan Marion, Justice
               Patricia O. Alvarez, Justice

Delivered and Filed:  January 8, 2014

REVERSED AND RENDERED; REMANDED

Following a bench trial, the trial court entered a judgment against appellants (Woodlake Management, L.L.C. and John Butuza). The judgment awarded appellees (Richard J. Bonjorno and Judy C. Bonjorno Revocable Trust, Dated June 9, 1983, and Richard Bonjorno, individually) (collectively "Bonjorno") $352,324.01 in damages, $51,871.41 in attorney's fees, contingent appellate attorney's fees and court costs. Findings of fact were not requested. Woodlake and Butuza (hereinafter, "appellants") appeal the trial court's judgment contending (1) the trial court

erred by entering judgment on Bonjorno's DTPA claim when the evidence conclusively proved the DTPA did not apply to the transaction, (2) the trial court erred by entering judgment on Bonjorno's statutory fraud claim when there is no evidence to show that he relied on the alleged misrepresentation, and (3) the trial court erred by entering a judgment against Butuza individually even though appellees did not plead any allegations or present any evidence to support piercing the veil of the LLC. Appellants also assert on appeal that, if this court reverses the trial court's judgment, this cause should be remanded for consideration of the amount of attorney's fees to which they are entitled as the prevailing party, or alternatively, to the extent Bonjorno prevails in part on appeal, Bonjorno's award of attorney's fees should be remanded to the trial court so the award can be segregated. In an opinion and judgment issued September 18, 2013, we reversed the trial court's judgment and rendered judgment that Bonjorno take nothing. Appellants subsequently filed a motion for rehearing, asserting this court did not address their entitlement to attorney's fees. We grant the motion, withdraw our opinion and judgment of September 18, 2013, and issue this opinion and judgment in their place for the sole purpose of addressing appellant's entitlement to attorney's fees.

## BACKGROUND

In 2006, Richard Bonjorno purchased Woodlake Village Apartments from Woodlake Management for $1.85 million. John Butuza was the president of Woodlake Management. Subsequent to purchasing the apartments, it was discovered the apartments had serious roof problems, resulting in Bonjorno completely replacing the roof. Bonjorno sued Woodlake Management and Butuza, alleging statutory fraud and additional claims under the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA") for Butuza and Woodlake Management's failure to disclose the defects with the roof.

**STANDARD OF REVIEW**

As stated previously, findings of fact were not requested. Where no findings of fact are requested, the judgment of the trial court must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex. 1984). It is therefore implied that the trial court made all findings necessary to support its judgment. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). However, implied findings of fact, like the trial court's findings, may be challenged for legal and factual sufficiency. *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989).

When reviewing whether evidence is legally sufficient to support a verdict, we must view the evidence in the light favorable to the verdict, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). Evidence is legally insufficient and is considered "no evidence" when "(a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). "For evidence to conclusively establish the opposite of a vital fact, the evidence must be the type that could not lead reasonable people to different conclusions." *Regal Finance Co., Ltd. v. Tex Star Motors, Inc.*, 355 S.W.3d 595, 603 (Tex. 2010) (citing *City of Keller*, 168 S.W.3d at 815–16).

We review a trial court's determination of legal principles de novo. *Marshall v. M.F. Kusch*, 84 S.W.3d 781, 784 (Tex. App.—Dallas 2002, pet. denied).

## DTPA CLAIM

In the first issue, appellants contend there is no evidence to support a judgment in favor of Bonjorno under the DTPA.

Texas Business and Commerce Code section 17 is also known as the Deceptive Trade Practices-Consumer Protection Act ("DTPA"). *See* TEX. BUS. & COMM. CODE ANN. § 17.41 (West 2011). Section 17.49 provides: "Nothing in this subchapter shall apply to a cause of action arising from a transaction . . . involving total consideration by the consumer of more than $500,000, other than a cause of action involving a consumer's residence." TEX. BUS. & COMM. CODE ANN. § 17.49(f) (West 2011). It is undisputed that the transaction involved here was the sale of an apartment complex, not Bonjorno's residence, for an amount of $1.85 million—well above the $500,000 limit—and Bonjorno concedes the DTPA does not apply. We agree Bonjorno's claims under the DTPA are barred as a matter of law.

The order granting final judgment in favor of Bonjorno states: "The Court, after having examined the pleadings, hearing the evidence and hearing the arguments of counsel on all matters in controversy as well as of law, FINDS that the facts alleged in Plaintiff's Original Petition have been proven by full and satisfactory evidence." The judgment does not specify the causes of action on which Bonjorno prevailed.

As stated above, the DTPA did not apply to Bonjorno's cause of action as a matter of law. However, Bonjorno alleged statutory fraud claims in addition to his DTPA claims. Without findings of fact or conclusions of law, we must imply the trial court made all the findings necessary to support its judgment and entered a judgment on the claims that were valid. Accordingly, although Bonjorno's DTPA claim fails as a matter of law, we must now determine whether the evidence supported a judgment on the statutory fraud claim also alleged in Bonjorno's original petition.

# STATUTORY FRAUD CLAIM

In the second issue, appellants claim there is no evidence to support a judgment in favor of Bonjorno under his statutory fraud claims.

In the original petition, Bonjorno alleged appellants committed fraud under Texas Business and Commerce Code section 27.01 which provides:

(a) Fraud in a transaction involving real estate . . . consists of a
    (1) false representation of a past or existing material fact, when the false representation is
        (A) made to the person for the purpose of inducing that person to enter into a contract; and
        (B) relied on by that person in entering into that contract . . .

TEX. BUS. & COM. CODE. ANN. § 27.01(a) (West 2009). "Fraud under section 27.01 requires evidence that the defendant made a false representation to the plaintiff that induced the plaintiff to enter into a real estate contract to his or her detriment." *Martin v. New Century Mortg. Co.*, 377 S.W.3d 79, 86 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *see* TEX. BUS. & COM. CODE. ANN. § 27.01(a) (West 2009). Bonjorno asserts he relied on Butuza's misrepresentations about the roof, which induced him to "enter into the closing documents." Bonjorno asserts Butuza misrepresented the condition of the roof in his statements to Bonjorno's agent and because the expense reports Butuza provided to Bonjorno indicated there were no expenses for roof repairs to the property for the last few years, even though Butuza later admitted he had performed some patching himself.

Appellants assert on appeal there is no evidence to support Bonjorno's fraud claim because the alleged misrepresentation made to Bonjorno's agent about the roof was never relayed to Bonjorno before the parties closed the contract and, therefore, Bonjorno could not have acted in reliance on the alleged misrepresentation. The appellants also assert Bonjorno could not have relied on the alleged misrepresentations because he personally saw conditions consistent with roof damage and he was provided with a written inspection report that indicated problems existed with the roof.

Sandra Schultz, the Vice President of Drought Properties, testified at trial. Schultz testified her company served as Bonjorno's property manager pursuant to an express agreement to be Bonjorno's agent. Bonjorno lived in California and Schultz testified she became Bonjorno's representative in March, "fairly close to right before they closed" on the property. The day before Bonjorno closed on the property, Schultz went to the property and met with Butuza and Linda Sorenson, the property manager at the time. Schultz testified that during this meeting she asked Butuza about any maintenance issues with the property. She testified:

> A: Typically what I do is any time I see maintenance or an owner I'll ask them about plumbing issues, roof issues, electrical issues, just so that we can get an idea of what we're getting into. So I had specifically asked about roof, plumbing, and electrical, and he told me that everything was good, that he had fixed it.
> Q: That he had fixed it?
> A: Uh-huh.
> Q: Is that a yes?
> A: Yes.
> Q: Okay. So, to the best of your recollection, could you tell us how you posed that question to Mr. Butuza?
> A: I just asked. It was a simple question of, is everything good, you know, are there any issues that I need to be concerned about.
> Q: And you had introduced yourself to him at that point?
> A: I believe so.
> Q: And how strong is your recollection regarding what his response was?
> A: Pretty strong.
> Q: And why is that?
> A: Actually, when I go, when we do a takeover, I always take my daytimer, and I always make notes in my daytimer. So I wrote it down.

Schultz further testified that she wrote in her daytimer the following: "Woodlake property is nice, clean. Manager needs training. Old owner does all maintenance. [Butuza] said no issues, roof good, made repair on some, no plumbing issues, no electrical." Schultz testified that prior to closing she understood Butuza had made some repairs to the roof, but that the roof was "good" and if Butuza had advised her that there remained issues with the property she would have notified Bonjorno of the issues. Bonjorno asserts this constituted a misrepresentation to Schultz that

supports his claim of statutory fraud because Schultz was his agent and Butuza's misrepresentation to her induced him to enter into closing documents the next day.

The record demonstrates on January 19, 2006, two months prior to closing, the parties entered into a contract for the sale of the property. The contract provided that, prior to closing, the buyer "may complete or cause to be completed any and all inspections, studies, or assessments" of the property. The contract also contained a "present condition" clause, which stated "Buyer accepts the Property in its present condition except that Seller, at Seller's expense, will complete the following before closing . . . ." Nothing followed this paragraph, indicating there was nothing Butuza must complete before closing according to the contract.

On January 27, 2006, Bonjorno did a "walk-through" of the property and had an inspection performed with an inspector from Phillips Commercial Real Estate Services. During this physical inspection, Bonjorno testified he saw leaks and patching on the interior of the units. Bonjorno testified that although he saw these issues, he did not ask any questions about them. Phillips Commercial prepared a report of the inspection, which Bonjorno testified at trial was prepared for his benefit. Although the report was created on January 27, Bonjorno testified he received it "late" and did not read it until two weeks prior to closing. The inspection report noted several issues with the structure and the roof of the property. The report noted "shifting" had occurred structurally and was "visible both on the interior and exterior." The report also stated, "[t]his shifting also appears to be damaging the integrity of the roof and its ability to prevent water intrusion in several areas." The report contained a section about the roof. The report stated:

> The roof appears to be the original roof with no known reproofing done but instead patching and needed repairs. A large portion of the property showed evidence of roof leaks on the interior of the units. Water damage had occurred on the interior of the units and while mechanical repairs appeared to be done sufficiently, the cosmetic repairs were in many cases very poor and in some non-existent.

There were areas noted on the exterior that suggested existing and future problems, many of which can also be attributed to the excessive foundation shifting. The pulling force being exerted on several of the exterior walls of the property has caused the separation of the wall and roof seam. This problem has likely compounded any roofing problems that the property would have normally gained over time. A quick fix to the problem would be to repair, and in some cases just install wear [sic] missing, the flashing that would normally protect this seam.

The roof also showed evidence of some roof decking beginning to give way and allow a sinking affect to occur. This type of roofing damage is normal with this age of roof but still needs to be repaired. One of the best ways to do so is to replace the roof decking.

Finally, the report concluded:

Our suggestion for the roof would be to repair the flashing and identify the sub floors that need repair and repair/replace them. Little can be done to the roof problem without first halting the foundation shifting.

Although Bonjorno testified he received this report "late," he acknowledged he received it and he admitted he did not ask any questions about the roof of the property despite the information indicating significant roof issues in the report.

After the inspection and Bonjorno's walk-through of the property, the parties subsequently amended the contract to demonstrate a reduction in sales price and a change in the closing date. However, the amendment contained a "Repairs" section of the contract which stated, "Buyer accepts the Property in its present condition except that Seller, at Seller's expense, will complete the following before closing . . ." and, once again, no notations were made following the "Repairs" provision indicating there was nothing Butuza was required to repair prior to closing.

Even assuming the expense reports provided to Bonjorno and the statement Butuza made to Schultz were actionable misrepresentations, we conclude there is no evidence to support Bonjorno's statutory fraud claim. Reliance is an essential element of a statutory fraud claim. TEX. BUS. & COMM. CODE § 27.01(a); *see Van Marcontell v. Jacoby*, 260 S.W.3d 686, 691 (Tex. App.— Dallas 2008, no pet.). Bonjorno was provided with a detailed report that indicated significant

issues existed with the roof of the property. Bonjorno testified he received the report approximately two weeks prior to closing; however, he did not ask any questions about the roof and the subsequent amendment to the contract did not indicate anything about the roof in the "Repairs" section. Bonjorno could not have relied on Butuza's alleged misrepresentations when he had the same information provided to him in his own inspection report. The evidence of the inspection report and Bonjorno's testimony admitting he read the report prior to closing, coupled with Bonjorno's testimony that he saw evidence of patching and leaking in his own personal inspection is "the type [of evidence] that could not lead reasonable people to different conclusions" about Bonjorno's reliance on Butuza's alleged misrepresentations. *Regal Finance Co.*, 355 S.W.3d at 603 (citing *City of Keller*, 168 S.W.3d at 815–16); *see also Lesieur v. Fryar*, 325 S.W.3d 242, 249 (Tex. App.—San Antonio 2010, pet. denied) (holding recovery for fraud was precluded when plaintiff obtained a pre-purchase inspection that detailed the same foundation problems they alleged defendants misrepresented in sale of home). This evidence conclusively established the opposite of a vital fact (reliance) and, accordingly, we sustain appellants' legal sufficiency challenge as there was "no evidence" to support a judgment of statutory fraud. *See City of Keller*, 168 S.W.3d at 816 (there is "no evidence" when there is "conclusive evidence to the contrary"); *King Ranch*, 118 S.W.3d at 751.[1]

## ATTORNEY'S FEES

The contract for sale in this case includes the following provision:

17. ATTORNEY'S FEES: If Buyer, Seller, any broker, or any escrow agent is a prevailing party in any legal proceeding brought under or with relation to this contract or this transaction, such party is entitled to recover from the non-prevailing

---

[1] Bonjorno also asserts a common law fraud claim was tried by consent upon which the judgment may be upheld. However, reliance is also an essential element of a common law fraud claim. *See Sears, Roebuck & Co. v. Meadows*, 877 S.W.2d 281, 282 (Tex. 1994). Even assuming a common law fraud claim was tried by consent, because we have concluded Bonjorno's statutory fraud claim fails because there was no evidence of reliance, we conclude any common law fraud claim also fails for the same reason.

parties all costs of such proceeding and reasonable attorney's fees. This Paragraph 17 survives termination of this contract.

In its final judgment, the trial court awarded attorney's fees to Bonjorno. However, because the prevailing party at trial has now changed, we remand the cause to the trial court to consider the amount of attorney's fees to which appellants are entitled in light of this opinion.[2]

## CONCLUSION

We conclude Bonjorno's DTPA claim fails as a matter of law and sustain appellants' first issue on appeal. We also sustain appellants' second issue on appeal and conclude there is no evidence to support a judgment on Bonjorno's statutory fraud claim.[3] Accordingly, we reverse the judgment of the trial court and render that Bonjorno take nothing. We remand for consideration of an award of attorney's fees to appellants consistent with this opinion.

Sandee Bryan Marion, Justice

---

[2] In the response to appellants' motion for rehearing, Bonjorno raises two objections. First, Bonjorno contends appellants' evidence at trial regarding attorney's fees is insufficient; therefore, they are not entitled to any fees. This is a question to be addressed by the trial court on remand. Second, Bonjorno asserts we may not remand for consideration of attorney's fees to appellants because an appellate court may not initiate an award of attorney's fees. The cases on which Bonjorno relies all involve fees on appeal. Here, the issue is an award of fees—pursuant to a contract—to a party that has prevailed at trial.

[3] We decline to address appellants' third issue and that portion of their fourth issue pertaining to Bonjorno's entitlement to attorney's fees as they are not dispositive to this appeal. TEX. R. APP. P. 47.1.